JOHN P. ARTHUR v. PHILIP S. HENRY ET AL.

(Filed 20 December, 1911.)

1. **Contracts—Independent Contractor—Dangerous Work—Owner's Liability—Respondeat Superior.**

The owner or proprietor of work necessarily and inherently dangerous in its performance, as in this case blasting rock in the corporate limits of a town near the homes of the plaintiff and several others, and which to the knowledge of the defendant had caused rocks to be thrown upon plaintiff's dwelling and rocks and dirt upon his premises, with loud explosions and great force, cannot, by contract with another creating the relationship of independent contractor, escape liability from the damaging consequences of the work done thereunder. *Hunter v. R. R.,* 152 N. C., 688, cited and applied.

2. **Master and Tenant—Evidence—Nonsuit.**

Where in the defense to an action for damages for a personal injury the relationship of independent contractor is unsuccessfully relied on by the owner or proprietor, the evidence tending to show that the damages sought were caused by the negligent act of the independent contractor will be considered on motion to nonsuit in the same view as that of the owner and proprietor, and when there is conflicting evidence as to the negligent act, the court may not pass upon the credibility of witnesses, but must leave the question for the determination of the jury.

3. **Same.**

The evidence in this case is sufficient of an agent's negligence for which his principal is responsible in damages caused by blasting near the residence of the plaintiff in an incorporated town, which tends to show that for smothering the blasts six small pine logs were used, that stones were showered on plaintiff's premises, falling around the house in which he and his sister lived, one of the stones "as large as an ordinary letter box" fall-

ing beyond the house, and shattering a limb of a tree in front of it, others falling on sheds on the premises and likewise destroying plaintiff's grapevines and fruit trees.

### 4. Master and Servant—Dangerous Work—Wantonness and Reck-lessness—Punitive Damages—Respondeat Superior.

When there is evidence that the defendant negligently caused damages to the plaintiff's property from blasting near it, punitive damages are recoverable when it is shown that the defendant evinced a reckless indifference to the rights of the plaintiff, and that the acts' complained of were wantonly done, or from a bad motive.

### 5. Same—Evidence.

The plaintiff may recover punitive damages caused to his premises by the negligent blasting of rock by the defendant nearby, when it is shown that the defendant had unsuccessfully attempted to buy the plaintiff's property, and thereafter, upon complaint of the blasting, had promised to correct the trouble; that he had endeavored to secure the services of the plaintiff to draw contracts for him with other owners of property similarly situated, so that he might escape liability from his blasting operations by lease to insolvent persons, declaring he was going to operate a power-house all night under plaintiff's threat of indictment; further saying he would find a way without incurring liability, which resulted in his attempting to carry out his purpose by entering into a contract for the continued work to be done by an independent contractor, without regard to the care which should be taken by him, but with provision that the defendant should be saved harmless from liability; that the operations of blasting under the contract were more damaging than theretofore.

### 6. Same—Notice.

When there is evidence of recklessness and wantonness on the part of defendant's lessee which caused damage to plaintiff's property located near, a conversation between the parties to the effect that a rock had fallen from a blast on the plaintiff's house previously, is competent as tending to fix the defendant with notice of the danger to plaintiff's property at the time of his making the lease set up in defense to avoid liability, there being evidence that the lease was made in order that the defendant might continue to have the blasting done and thus make the defense available to him.

**7. Punitive Damages—Financial Condition—Measure of Damages—Evidence.**

When punitive damages may be awarded, evidence of the defendant's financial condition is admissible in behalf of the plaintiff.

**8. Measure of Damages—Dangerous Work—Consult—Negligence—Due Care—Questions for Jury.**

In plaintiff's action for damages to his property for the negligent blasting operations of the defendant, there was conflicting evidence as to whether the plaintiff gave the defendant his consent, and thereafter notified him to desist: *Held*, in this case, that the consent did not imply that the blasting should be done with threatened injury to life and property, and it was for the jury to determine, upon their finding that the consent was given, whether the defendant continued to blast after notice to desist, and whether the defendant continued to blast in a negligent or obviously dangerous manner, such as was inconsistent with due care, or whether from the operations there was no other or further injury to plaintiff's property than was necessarily involved in the operation of the quarry.

**9. Measure of Damages—Retraxit—Consideration—Evidence—Limitation of Actions.**

When, with competent evidence, the plaintiff has established his right to recover damages to his property caused by the negligent blasting of rock by the defendant, his statement on the witness stand that he asks no damages prior to a certain date within the statutory time, is not *a retraxit* and is without consideration, and does not bar him of his right to recover all the damages he is entitled to not barred by the statute of limitation pleaded by the defendant.

**10. Issues—Pleadings—Appeal and Error.**

When the issues submitted arise from the pleadings and present all the contentions of the parties it will not be held as reversible error on appeal for the court to refuse to submit other issues.

**11. Limitations of Actions—Absence from State—Computation of Time—Interpretation of Statutes.**

The absence of a defendant from the State for more than one year is excluded from the computation of time for the running of the three-year statute pleaded in bar. Revisal, sec. 366.

ARTHUR v. HENRY.

12. Instructions—Requests—Defined—Damages Claimed—Harmless Error.

The refusal by the trial judge to give a special prayer for instruction requested, excluding from their consideration damages to the health or person of the plaintiff, is not held for reversible error in an action for damages to his property caused by the negligent blasting of rock by the defendant near it, when the judge confines the recovery to injury to property, though as a cautionary measure it might have been given with propriety.

APPEAL from Carter, J., at May Term, 1911, of BUNCOMBE.

This action was brought by the plaintiff against the defendant to recover damages alleged to have been sustained by the plaintiff on account of the operation of a stone quarry by the defendant Philip S. Henry, on land belonging to the defendant and adjoining plaintiff's land. An injunction was sought in the case against all the defendants, but damages claimed only as against the defendant Philip S. Henry. The plaintiff claimed that the defendant had operated his quarry, which was within a few feet of the line between plaintiff and defendant, and about 400 feet from the plaintiff's house, in a negligent, careless, and reckless manner, and had thrown stones, dirt, dust, and other substances on the plaintiff's premises; had killed and destroyed his fruit trees, shade trees, herbs, and grass; had thrown stones and dirt and dust into and on the plaintiff's house, and had, by means of the noise caused in the operation of said stone quarry and in operation of a stone crusher as a part thereof, created a nuisance and seriously damaged his property. The plaintiff also claimed that the defendant had made a lease of his stone quarry for the purpose of avoiding liability for damages to the plaintiff, and that the lessee, Faragher Engineering Company, operated said quarry in a negligent, careless, and reckless manner, damaging his property; and further, that all of these acts were done by the defendant willfully and wantonly and committed for the purpose of injuring the plaintiff, and with the knowledge that said action would injure the plaintiff and his property.

The quarrying was begun in May or June, 1904, and blasting was necessary and resorted to, and in the progress of the work stones were thrown upon the plaintiff's land and on his house.

The defendant carried on his operations from June, 1904, to

some time in October, 1906. The evidence of the plaintiff himself shows that he had no personal knowledge as to the date of the commencement of these operations, being away from home at the time; that on his return he found that a rock had been thrown onto the roof of his house, injuring it, requiring an expense of $1.50 for repairs, which defendant paid. Upon the throwing of the stone on the house appellant ceased his operations and did not resume until plaintiff consented he might. No stones were ever thrown upon the house after the first one, but were thrown in his yard. The plaintiff was never at home when the blasting was going on, but at his office in the First National Bank Building, and Library Building, but could hear the explosions. He made no claim for the injury done the house, and makes none in this action, and said on his examination that he did not claim damages prior to 4 August, 1906.

In July, 1906, the attorney in fact of appellant leased the quarries to a corporation called Faragher Engineering Company, and this company began operating the quarries about August or September afterwards, and continued until March or April, 1907.

There was evidence showing that the plaintiff owned a lot of land in the city of Asheville, consisting of several acres, where he resided with his sister, both being unmarried; that defendant purchased a tract of land adjoining the plaintiff's, and that the defendant's land was situated south and east of the plaintiff's land on the side of the Town Mountain in the corporate limits of Asheville; that the defendant's land lay considerably above the plaintiff's land, and that in 1904 the defendant opened up a stone quarry on his land at a point about 30 or 40 feet from the plaintiff's line, and about 400 feet from the plaintiff's house, but at an elevation of 50 to 100 feet above the plaintiff's residence; that this stone quarry was operated by means of blasting, and that a stone crusher was operated at the quarry, where the stone was crushed into dust and small pieces of stone, which stone crusher was run by steam power. The evidence tended to show that, beginning in 1904, the defendant had in person operated the quarry from time to time, and that while he so operated it the plaintiff's lands were damaged, as alleged by the

plaintiff; that in June and September, 1905, February, 1906, the defendant told the plaintiff that he wanted an agreement drawn whereby the quarry could be operated without liability on his part, and proposed to make some arrangement with insolvent persons to conduct the quarry, and after considerable talk about the matter there were some bitter words between the parties, the defendant saying, "I will find a way to use that quarry without being liable." That in July, 1906, the defendant leased the quarry to the Faragher Engineering Company, to whom defendant had promised to lease it, before he left for Europe. In this lease defendant retained the right to have a representative at the quarries to measure the stone removed, and had the lessee to agree to indemnify him against all claims and actions for damages, but did not retain the right to supervise the proper and safe operation of those quarries, or require the lessee to agree to conduct them safely.

Operations in the mine again began in 1909.

There was also evidence that the defendant knew the injurious character of the operations at the quarry; that he knew the operations were calculated to injure the plaintiff; that he had endeavored to get the plaintiff to draw a contract whereby he would be released from liability; had endeavored to get him to act as his attorney and adviser; had proposed to lease the quarry to insolvent persons for the purpose of being relieved of liability, and finally had told the plaintiff that he would find a way to operate the quarry without liability; and that he leased the quarry to the Faragher Engineering Company.

The defendant was absent from the State from May, 1906, to October, 1907.

At the conclusion of the evidence the defendant moved for judgment of nonsuit, upon the ground that the operation of the mine up to the time the Faragher Company began work was with the consent of the plaintiff, and that the defendant was not responsible for the acts of Faragher Company, which was overruled, and the defendant excepted.

The defendant tendered the following issues, which his Honor declined to submit, and the defendant excepted:

ARTHUR *v.* HENRY.

1. Was the plaintiff's property injured by the willful and wanton acts and negligence of the defendant prior to 4 August, 1906, as alleged in the complaint?

2. If so, what actual damages is plaintiff entitled to recover?

3. Is plaintiff entitled to recover punitive damages on account of said willful and wanton acts and negligence, and if so, how much?

4. Was the cause of action, if any, of plaintiff against defendant prior to August, 1906, barred by the statute of limitations at the date of the commencement of this action?

5. Was plaintiff's property injured by the willful and wanton acts and negligence of the Faragher Engineering Company, as alleged in the complaint, after 4 August, 1906?

6. Is the defendant liable to plaintiff for the willful and wanton acts and negligence of the Faragher Engineering Company, as alleged in the complaint?

7. If so, what actual damage is plaintiff entitled to recover?

8. Is plaintiff entitled to recover from the defendant punitive damages on account of the willful and wanton acts of the Faragher Engineering Company, alleged in the complaint?

9. If so, how much?

The court adopted the following issues, to which defendant, excepted:

1. Was the plaintiff, John P. Arthur, damaged by the negligent, wrongful, and unlawful acts of the defendant Philip S. Henry, as alleged in the complaint?

2. What amount of damages by way of compensation for such acts committed after 4 March, 1905, if any, is the plaintiff entitled to recover?

3. Were such acts done by the defendant wantonly and willfully and in reckless and wanton disregard of the plaintiff's rights?

4. What amount of punitive damages, if any, is the plaintiff entitled to recover for such acts committed after 4 March?

The defendant requested the court to instruct the jury as follows, which request the court refused, except as stated:

1. There is no evidence in the case to justify the awarding by the jury of punitive or exemplary damages for any of the alleged acts of the defendant committed prior to 4 August, 1906.

2. Punitive or exemplary damages cannot be recovered by plaintiff against defendant for any acts of the Faragher Engineering Company, alleged in the complaint.

3. There is no evidence in the case of malice or wantonness toward plaintiff on the part of the defendant.

4. There is no evidence in the case that any of the alleged acts of the defendant were willful.

5. There is no evidence in the case to fix any liability upon defendant for any of the acts alleged against the Faragher Engineering Company, or for damages or injuries done defendant by said company.

6. If the jury shall find from the evidence in the case that the defendant conducted his blasting operations with the consent of the plaintiff, the plaintiff cannot recover damages against the defendant.

7. If the jury shall find from the evidence in the case that plaintiff from time to time in the progress of the quarrying operations of defendant, alleged in the complaint, requested defendant to continue his work and not to stop on his (plaintiff's) account, and defendant did continue until notified by plaintiff to desist and cease to carry on said operations, and the defendant, upon receipt of such notice, did desist and cease, the plaintiff cannot recover damages on account of injuries to his property resulting from said operations.

The court modified this instruction by adding thereto the following:

"Provided due care was exercised in the conduct of such operations." As modified, the said instruction was given.

8. That the cause of action of plaintiff for damage and injury to the plaintiff's trees and shrubbery, if any was done by the defendant, was barred by the statute of limitations when this action was begun.

9. There is no evidence that the plaintiff sustained any personal injury or injury to his health by any operations of defendant or his lessee.

There are also exceptions to evidence and to parts of the charge.

The jury answered all the issues in favor of the plaintiff, and from a judgment thereon, the defendant appealed.

*Locke Craig, Jones & Williams, and Martin & Wright for plaintiff.*

*James H. Merrimon and J. G. Merrimon for defendant.*

ALLEN, J.   There are forty-three exceptions in the record, all of which may be considered under the following propositions:

(1) Is there evidence which justified submitting the case to the jury?

(2) Is there evidence upon which the defendant can be held liable for the acts of Faragher Company?

(3) Is there any evidence of wanton or malicious conduct on the part of the defendant which will support an award of punitive damages?

(4) Did the plaintiff consent to the operations of the defendant, and if so, does such consent absolve him from liability?

(5) Does the evidence of the plaintiff that he claimed no damages prior to August, 1906, prevent a recovery of other damages, not barred by the statute of limitations?

(6) Is there error in refusing the issues tendered by the defendant, or in submitting those passed on by the jury?

(7) Is the plaintiff's cause of action or any part thereof barred by the statute of limitations?

Eliminating for the present the effect of consent by the plaintiff to the operations of the defendant, and also the plea of the statute of limitations, it is well to consider the first three propositions together, as much of the evidence bears on all of them, and it is also advisable to determine in the outset how far, if at all, the defendant is liable for the conduct of the Faragher Company.

It is in evidence that, prior to the lease to the Faragher Company, the defendant had been operating his quarry, and that blasting was necessary in the work he was doing; that he had thrown stones on the premises of the plaintiff; that complaint had been made and he had been told of the danger to the plaintiff, and that the lease to the Faragher Company was for the purpose of having these operations continued.

It is also in evidence that the quarry was within the corporate limits of the city of Asheville, and that there were several homes, including that of the plaintiff, near to it.

This evidence, if accepted by the jury, brings the case within the doctrine of *Hunter v. R. R.*, 152 N. C., 688, in which the defendant began blasting on its right of way for a lawful purpose, and after notice of danger to the plaintiff entered into an agreement with another to do the work in the same way, under a contract which, by its terms, would establish the relation of independent contractor, and it was held that the defendant was liable for the acts of the contractor.

In *Thomas v. Lumber Co.*, 153 N. C., 358, *Justice Manning* reviews the cases holding that one cannot escape liability by entering into an independent contract, if the work to be done is intrinsically dangerous, and says, with reference to the *Hunter case, supra:* "In *Hunter's case* this Court ruled that the work there handed over to the independent contractor to be done, to wit, blasting of rock, fell within the established exception to the rule of nonliability, by reason of its dangerous character."

These decisions were the result of the unanimous opinion of the Court, and on their authority we must hold that the work to be done was of such character that the defendant could not protect himself by the lease he made, and that he is liable for the acts of the Faragher Company in the prosecution of the work.

If so, all the evidence as to the operation of the quarry may be considered in determining whether there was sufficient evidence to be submitted to the jury.

The plaintiff was entitled to recover damages, if the defendant threw stones upon his land without his consent, and if he consented to the use of the quarry, he could also recover if the work was negligently done.

As we are not now considering the effect of consent on the part of the plaintiff, the question then arises, Was there evidence of negligence on the part of the defendant or Faragher Company?

There was evidence that by the use of proper precautions there would be no danger to the plaintiff's property, and that persons 400 or 500 yards away would not be disturbed by the noises more than by ordinary traffic.

There was also evidence that the precautions used were not sufficient; that the defendant used for smothering the blasts six

·small pine logs; that stones were showered on the premises of the plaintiff, and fell around the house the plaintiff and his sister were living in; that one stone as large as an ordinary letter box came over the house and shattered the limbs of a tree in front of the house; that stones fell on the sheds on the premises, and that grapevines and fruit trees were destroyed. There was also evidence that one of the blasters employed at the quarry was reckless, and that another said just before a blast that he was going to shell the town, and that when he fired the blast rocks and stones flew everywhere. This was, in our opinion, ample evidence of negligence.

There was much evidence to the contrary, tending to prove that diligence was exercised by the defendant and that he was careful to avoid injury to the plaintiff, but it is not within our province to pass on the credibility of the witnesses.

If there was evidence of negligence for the consideration of the jury, was there any view of the case in which the question of punitive damages could be submitted to them?

If there was evidence that the acts of the defendant evinced a reckless indifference to the rights of the plaintiff, that they were done wantonly, or from a bad motive, punitive damages could be awarded.

There was evidence that the defendant knew that the operation of the quarry was dangerous, and that it was injurious to the property of the plaintiff; that he had tried to buy the plaintiff's property; that complaints had been made to him from time to time and that he had promised to correct the trouble; that he had endeavored to secure the services of the plaintiff to draw a contract for him with other persons, by which he would escape liability; that he had proposed to lease the quarry to insolvent persons for this purpose; that he had threatened the plaintiff, saying he was going to operate a power-house all night; that the plaintiff told him that he would have him indicted, and that he replied that he would find a way by which he could use the quarry without incurring any liability to the plaintiff; that within a few months he leased the quarry to the Faragher Company for the purpose of having it operated, in which lease there was no stipulation for prudent management, or that any pre-

cautions should be taken to protect the property of the plaintiff, but it was provided therein that said company would save the defendant harmless from any and all actions or claims for damages of all kinds, character, or description caused by any operations, conduct, or work in, at, and upon the said quarries, by, through, and with its servants, agents, and employees, and would prosecute any and all actions necessary for the full, complete, and ample protection of the defendant against such claims, and that while the quarry was operated by the Faragher Company conditions were worse than before.

There was also evidence on the part of the defendant directly contradicting the evidence of the plaintiff, and tending to prove that he had treated the plaintiff at all times with neighborly consideration; that he had always discontinued the operations when the plaintiff asked him to do so; that he never resumed the operation of the quarry unless requested to do so by the plaintiff; that he made the lease to the Faragher Engineering Company in good faith and for the purpose of carrying out works of public improvement; that the Faragher Engineering Company was capable of carrying on these operations in an inoffensive manner; that Mr. Odell, the engineer of the Faragher Engineering Company, was an engineer of ability and knew how to carry on these operations without offense, and that it would be contrary to all the intercourse between the plaintiff and the defendant to find that the defendant had been actuated by the sinister motive of wishing to injure the plaintiff by this lease.

These were matters for the jury and at least furnished some evidence that the defendant was recklessly indifferent to the rights of the plaintiff.

If there was evidence of negligence and wantonness on the part of the Faragher Company, the conversation of the plaintiff with the defendant in 1904, as to the operation of a quarry near him, the letter of 16 February, 1906, and the rock which fell on the house of the plaintiff in 1904, were competent as tending to fix the defendant with notice of the danger to the plaintiff's property at the time of the lease to the Faragher Company, and whenever punitive damages may be awarded, evidence of the

financial condition of the defendant is admissible in behalf of the plaintiff (*Tucker v. Winders,* 130 N. C., 147), and his Honor carefully restricted the evidence to these purposes.

This brings us to the consideration of the evidence tending to show consent on the part of the plaintiff, and it must be remembered that the defendant has at all times denied that there was negligence in the operation of the quarry, and that his contention is that the plaintiff consented for him to work the quarry, and not for him to work it negligently.

There is evidence of such consent, but it is coupled with the condition that the quarry must not threaten injury to life or property, and the question was properly submitted to the jury, as follows: "If the jury shall find from the evidence in the case that the plaintiff, from time to time in the progress of the quarrying operations of defendant alleged in the complaint, requested defendant to continue his work and not to stop on his (plaintiff's) account, and defendant did continue until notified by the plaintiff to desist and cease to carry on said operations, and the defendant, upon the receipt of such notice, did desist and cease, the plaintiff cannot recover damages on account of injuries to his property resulting from said operations, provided due care was exercised in the conduct of such operations; but a request of the plaintiff to the defendant not to cease and discontinue his work on those premises will not be construed by the law to authorize the defendant to conduct these operations in a negligent or in an obviously dangerous manner; and if you find from the evidence that the operations of the defendant in this quarry, and this stone crusher, during the period covered by your inquiry, were at the instance and express suggestion of the plaintiff, and you further find that these operations were conducted with due care, and that there was no other or further injury to the property of the plaintiff than was necessarily involved in the operation of the quarry, then the plaintiff would not be entitled to recover. But if you find that the operations were negligently carried on, and that unnecessary injury was done to the property of the plaintiff, the fact of the plaintiff's request or suggestion would not deprive him of the right to recover here."

Nor did the statement of the plaintiff on the witness stand, that he claimed no damages prior to 4 August, 1906, prevent an inquiry as to all damages not barred by the statute of limitations.

It is a statement which ought to have had weight with the jury, but it does not amount to a *retraxit,* and as a contract there is no mutuality and no consideration.

The issues adopted by the court were sufficient to present all the contentions of the parties, and they arose on the pleadings, and when this is true, the refusal to submit other issues is not error.

Nor do we find any error as to the statute of limitations.

The action was commenced on 4 August, 1909, and it was admitted that the defendant was absent from the State continuously for seventeen months, from 22 May, 1906, and his Honor told the jury they could not award damages for acts done prior to three years before the commencement of the action, excluding from the computation the time the defendant was absent from the State, which is in accord with the statute. Revisal, sec. 366.

His Honor might with propriety have given the ninth prayer for instruction as a cautionary measure, but he was not compelled to do so, as there was no evidence of injury to the health or person of the plaintiff, and there is no suggestion in the record that he claimed damages on that account, and the charge permits no recovery except for injury to property.

We have examined the record with care, and have considered all the exceptions, and find

No error.