18511

J. L. CRIDER, Respondent, v. INFINGER TRANSPORTATION COMPANY, Appellant

(148 S. E. (2d) 732)

*Messrs. Bryant & Fanning,* of Orangeburg, *and Furman R. Gressette,* of St. Matthews, *for Appellant,*

12

*Messrs. Gressette & Gressettte,* of St. Matthews, *for Respondent,*

May 30, 1966.

Moss, Chief Justice.

This action was instituted by J. L. Crider, the respondent herein, against Infinger Transportation Company, the appellant herein, seeking to recover actual and punitive damages for loss or damage to personal and real property, alleged to have been suffered by the respondent through the alleged negligence and willfulness of the appellant, its agents and servants. The appellant answered the complaint asserting a general denial and that the respondent's damage, if any, was caused by the negligence and willfulness of a third person.

It appears from the record that at about 1:30 on the morning of August 18, 1963, a truck and tanker trailer, loaded with hot liquid asphalt, was in a collision with another vehicle at Hammond's Cross Roads on U. S. Highway No. 176, near St. Matthews, South Carolina, with the result that the tanker was turned over, coming to rest in an upside down position on the highway, partially blocking

the said highway. The truck and tanker trailer was owned by the appellant and was being operated at the time by one of its drivers. As a result of the aforesaid collision, the drivers of the respective vehicles lost their lives.

The respondent owned four acres of land immediately adjacent to U. S. Highway 176. A portion of this tract was under fence for the raising of hogs and poultry thereon.

Following the aforesaid collision, the cargo of hot liquid asphalt, the temperature of which was 375 degrees, escaped from the said tanker and overflowed a portion of the lands of the respondent with resulting damage thereto and also to certain hogs and poultry. The respondent's action is based upon the negligence and willfulness of the appellant, its agents and servants, following the accident, in failing to use any care whatever to prevent the hot liquid asphalt from escaping from the tanker and overflowing his lands.

The highway patrol was notified of the collision and went to the scene. A wrecker was summoned by the patrolman for the purpose of removing the wreckage from the highway.

This wrecker, operated by a Mr. Hicklin, arrived at approximately 4:00 A. M. The appellant, whose office is in Charleston, South Carolina, was there notified by the Highway Patrol of the aforesaid collision and as a result of such notice, James E. Boswell, assistant manager of the appellant, arrived at the scene between 4:00 and 5:00 A. M. that morning. When he arrived, a wrecker under the direction of Hicklin, was attempting to remove the tanker from the highway and, during the process of removing the same, the hot liquid asphalt spilled from the tanker and overflowed a ditch on the highway right-of-way and spread therefrom onto the lands of the respondent.

Four of the witnesses in behalf of the respondent testified that following the collision they visited the scene thereof, leaving at approximately 3:30 A. M. and, at such time there was no asphalt escaping from the overturned tanker.

However, one of these witnesses, the wife of the respondent, testified that she returned to the scene of the collision that morning at 7:00 o'clock and that asphalt "was starting to escape" from the tanker. But when she was asked if the hogs had been damaged at 7:00 o'clock, she said: "Sure they were" and five of them died. From this testimony it follows that the spillage of asphalt had taken place a sufficient time prior to 7:00 o'clock for such to overflow the highway ditch and to spread onto respondent's land.

The respondent called as a witness James E. Boswell, the assistant manager of the appellant. He testified of his arrival at the scene of the collision between 4:00 and 5:00 o'clock in the morning, and at that time the back of the tanker had already been switched around so that it was not in the road. He further said that the tanker was turned upside down and a good stream of tar was coming out of it and such was running into a ditch and overflowing into this pasture. He further said that Hicklin was there but had not been called there by his company. He said also that the highway patrolmen were present but could not identify them by name. This witness was asked by counsel for the respondent what, if anything, he did "to prevent that tar from escaping and overflowing on the land of Mr. J. L. Crider." His answer was, "We could not do anything to prevent it," and at another time in response to a similar question, "There was nothing you could do." Upon cross-examination, when asked why nothing could be done, his answer was, "Because the temperature (of the asphalt) is 375 degrees and I don't think anybody would want to mess around it." He further explained that the reason that nothing could be done was that the drum on the tanker was bent and there was no way to stop the flow of liquid asphalt therefrom except "to right it back up" and that was done "as soon as possible." Boswell testified that he acquiesced in what was being done to remove the tanker from the highway.

The highway patrolman who called the wrecker testified. He said that the work of Hicklin in his efforts to remove

the tanker from the road was being done as a result of the conversation he had with him. He testified that he did not actually see the liquid asphalt coming from the tanker to the ground. He explained that he "did not get a chance to examine it" because "this accident was just over the little rise of a hill. Cars were coming at a pretty good speed. My main job was to prevent another accident." However, he did testify that he saw what Hicklin had done and that after his work was completed the ground was covered with liquid asphalt which had overflowed into the ditch and onto the land of the respondent.

This case came on for trial before The Honorable J. H. McFaddin, Presiding Judge, and a jury. At the conclusion of the taking of the testimony, the appellant made timely motion for a directed verdict upon the grounds: (1) That there was no proof of negligence or willfulness on the part of the appellant that brought about the damage alleged to have been sustained by the respondent; and (2) That there was no proof that the moving of the tanker was done by an agent of the appellant nor was there any ratification of the moving of said tanker by Hicklin. This motion was refused and the trial judge submitted to the jury the question of whether the appellant was guilty of negligent and willful conduct which proximately caused the injury or damage sustained by the respondent. The jury returned a verdict for actual and punitive damages in favor of the respondent. After the rendition of said verdict, the appellant moved for judgment *non obstante veredicto* and, in the alternative, for a new trial. The motion was refused and this appeal followed.

We think this appeal can be disposed of by the determination of the question of whether the trial judge erred in refusing the appellant's motion for a directed verdict and for judgment *non obstante veredicto* on the ground that the respondent's damage was caused by any

act of negligence or willfulness on the part of the appellant, its agents and servants.

The question of whether or not there was error in refusing the motion of the appellant for a directed verdict and judgment *non obstante veredicto* requires us to consider the testimony in a light most favorable to the respondent. If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference the question is no longer one for the jury but one of law for the court. *Elrod v. All,* 243 S. C. 425, 134 S. E. (2d) 410. It is elementary that in order for a plaintiff to recover damages there must be proof, not only of injury, but also that it was caused by the actionable negligence of the defendant. It should be kept in mind that the doctrine of *res ipsa loquitur* does not apply. *Gilliland v. Pierce Motor Co.,* 235 S. C. 268, 111 S. E. (2d) 521; *Bruno v. Pendleton Realty Co., Inc.,* 240 S. C. 46, 124 S. E. (2d) 580, 95 A. L. R. (2d) 1333.

Some question has arisen in this case as to whether the damage sustained by the respondent was the result of any acts of negligence or willfulness on the part of an agent or servant of the appellant. The question has also arisen as to whether Hicklin, at the time he removed the tanker from the highway, was acting as an agent or servant of the appellent. However, for the purpose of deciding the question we have here, we will assume that he was so acting.

It has been held that persons using a highway must exercise ordinary care to avoid injury to the owners of abutting property but are not liable for injuries caused to such owners as a consequence of a lawful and non-negligent use of the highway. 25 Am. Jur., Highways, Section 224, page 519. The burden of proof here is upon the respondent, as an abutting property owner, to show that his damage was caused by the actionable negligence and willfulness of the appellant.

A careful examination of the testimony of the witnesses in behalf of the respondent, other than that of the witness Boswell which will hereinafter be discussed, does not show any acts of commission or omission on the part of the appellant, its agents or servants, that would tend to prove or raise an inferene of negligence or willfulness. The substance of the testimony of all these witnesses is that they visited the scene of the collision, found the tanker turned upside down in the highway and when they left the scene at approximately 3:30 A. M., no asphalt was escaping from the overturned tanker.

The respondent called as one of his witnesses, James E. Boswell, and he gave the testimony which is hereinbefore summarized and quoted. There is certainly nothing in his testimony that would warrant an inference or a conclusion that the appellant was guilty of negligence or willfulness in removing the tanker from the highway when it is asserted that liquid asphalt escaped therefrom into a ditch and then onto respondent's land. Testimony of this witness exonerates the appellant of any actionable negligence or willfullness. The record fails to show the facts to be other than as this witness testified and having called him as a witness, the respondent was bound by his testimony. *Porter v. Hardee,* 241 S. C. 474, 129 S. E. (2d) 131. It is a general rule that a party is concluded by his own testimony which is favorable to the adverse party. *Elrod v. All,* 243 S. C. 425, 134 S. E. (2d) 410.

In order to find evidence in this record sufficient to require the submission of the negligence and willfulness of the appellant to the jury would require the application of the doctrine of *res ipsa loquitur* which we have consistently rejected and refused to follow.

It is our conclusion that the respondent has failed to carry the burden of showing any negligence or willfulness on the part of the appellant. We think the trial judge was in error for not so holding.

The exceptions which assigned error in refusing to grant the motions of the appellant for a directed verdict and judgment *non obstante veredicto* are sustained and this case remanded to the lower Court for entry of judgment, under Rule 27, in favor of the appellant.

Reversed.

LEWIS, BUSSEY and BRAILSFORD, JJ., and LEGGE, Acting J., concur.