19239

Harold LYTLE, Respondent, v. Russell D. REAGAN and Benson James, of whom Benson James is, Appellant

(182 S. E. (2d) 302)

*Messrs. Carlisle Bean & Hines,* of Spartanburg, *for Appellant,*

*Messrs. E. C. Burnett, Jr.,* and *James R. Turner,* of Spartanburg, *for Respondent,*

June 15, 1971.

BUSSEY, Justice:

The plaintiff-respondent sustained personal injuries while a passenger in an automobile driven by the appellant James, when such was in collision with a truck driven by one Reagan. He sued the drivers of both vehicles and, upon the trial, the verdict of the jury was as follows:

"We the jury, find for the plaintiff Five Thousand Dollars actual damages against the defendant Reagan for negligence and James for recklessness."

James appeals from an order refusing his motion for judgment *n. o. v.* His sole contention is that the plaintiff by his own testimony absolved James from any negligent act and that such testimony bars or precludes a recovery as against James.

Briefly stated the facts are as follows. The respondent Lytle and James are related. On the early afternoon of January 1, 1969, James and Lytle were proceeding south on Highway No. S-40 in Spartanburg County and near the intersection of Highway No. S-123 when the collision with the Reagan truck occurred. Highway Number S-123 intersects No. S-40 from the west, there being a stop sign on S-123. The Reagan truck came out of S-123 and turned left in a northerly direction on S-40 shortly before the collision. As between Reagan and James the evidence is in sharp conflict as to precisely how and where the collision occurred, and the cause or causes thereof.

It is admitted that the evidence, other than the testimony of Lytle, is sufficient to support his recovery against James. The only question is whether he is precluded by his own testimony from so recovering.

At the time of the collision Lytle and James had just come from a point a mile or two to the north of the scene where they had been to see a lot recently purchased by a cousin of theirs. Lytle's relatively brief account of the collision on direct examination, was as follows:

"A. Well, we were coming down the road and as we approached the intersection I was kinda looking off and turned my head and looked and there was a truck pulling right out in the street, and we were so close up on it we couldn't stop.

"Q. How close was your automobile to this truck when it pulled out, if you can tell us?

"A. We were right up on the truck.

"Q. And I believe you said you were not able to stop?
"A. No, sir.

"Q. Do you know if the driver of your car applied his brakes?

"A. Well, I couldn't say."

He testified as to the position of the vehicles after the collision only by placing toy vehicles on a board or diagram, so that we do not have the benefit thereof. He testified that he did not know whether the Reagan truck had or not stopped at the intersection and that he did not remember the James car skidding before the impact, there being evidence from a highway patrolman that it had laid down skid marks to the extent of 79 feet. Lytle did not testify as to the speed of the James automobile, nor did he testify to any specific facts or circumstances which would give rise to a reasonable inference of reckless or willful conduct on the part of James.

The following is quoted from the cross examination of Lytle:

"Q. Did you have an occasion when you were riding down there with Benson James, from these lots, did you complain about any way that he was driving?

"A. No, sir.

"Q. Was there any reason for you to complain?

"A. No, sir.

"Q. He was taking you home from where you had been up to your cousin's property?

"A. That's right.

"Q. And as far as you were concerned his driving was normal and safe, is that correct?

"A. Yes.

"Q. And if I am not mistaken, where you have placed these cars at the point of impact on this New Cut Road, the impact occurred in Benson James' lane of travel, didn't it?

"A. Yes."

Upon the impact, Lytle's head went through the windshield. The full extent of his injuries does not appear in the record but they were sufficient that he was carried to the

hospital by an ambulance. He did not, however, lose consciousness.

In at least two decisions of this Court it has been recognized that "It is a general rule that a party is concluded by his own testimony which is favorable to the adverse party." *Crider v. Infinger Transportation Co.,* 248 S. C. 10, 148 S. E. (2d) 732; *Elrod v. All,* 243 S. C. 425, 134 S. E. (2d) 410. Both of the cited cases are clearly distinguishable on the facts from the instant case. In *Crider* the rule was stated but not applied. In *Elrod* the plaintiff was held precluded from recovery because her complaint, the testimony of all of her witnesses and her testimony absolved the particular defendant.

"The extent to which a party is bound and concluded by his own adverse testimony in the case has been characterized as one of the most troublesome questions in the law of evidence and has been the subject of much diversity of judicial opinion. * * * It has been impossible for the courts to formulate a general and uniform rule patterned for all cases and they frequently depart from the espoused rules where the result would otherwise offend their sense of justice." 32A C. J. S. Evidence, § 1040 (3), *776, 777*.

The troublesome nature of this question and the difficulties encountered therewith by the courts are reflected in the following citations. 30 Am. Jur. (2d) 240, *et seq.,* Evidence, Sec. 1087; Annotation 169 A. L. R. 798, *et seq.,* 9 Wigmore on Evidence, (3d) Ed., 597, Sec. 2594a. The rule that a party is concluded by his own testimony, favorable to the adverse party, is predicated on the theory that such is tantamount to a judicial admission. A review of the authorities generally indicates that such rule is strictly and fully followed in only two or three jurisdictions. Most courts, while recognizing the rule, give to it only very limited application and recognize that there are many exceptions and circumstances where the strict application of the rule would be inequitable and unjust.

The facts of this case do not, in our judgment, require an effort on our part to formulate or apply a general or uniform rule as to the circumstances under which a party is bound and concluded by his own adverse testimony. The decided weight of authority from other jurisdictions, however, clearly supports the proposition that where the testimony of a party, adverse to himself, consists mainly of estimates, opinions and conclusions, rather than actual facts within his knowledge, such is not conclusive upon him when there is other evidence in the record tending to prove that such estimates, opinions and conclusions on his part are not in accord with the true facts. Courts also generally recognize that with respect to the circumstances of an accident or similar event, various witnesses, in all sincerity and attempted truthfulness, give different versions of the occurrence; that a party's testimony, like any other witness, is especially subject in such cases to inexactness of observation and memory and, hence, that he should not be concluded by one or more adverse details, as to which he might well be mistaken; but that his testimony should be weighed with that of any other witness or witnesses, who might give a different version of the occurrence, in effort to arrive at the truth.

In the instant case, while the testimony of Lytle did not implicate James, it nevertheless, did not necessarily absolve him. That Lytle had no reason to complain about the driving of James en route to the scene of the collision, of course, does not necessarily mean that James was not guilty of any willful or reckless conduct immediately prior to the collision. Lytle's agreement that the driving of James, while en route to the scene, was "normal and safe" was a mere conclusion or statement of opinion. No question was addressed to Lytle as to his oberservation, if any, of the speed of the James automobile or other specific conduct of James.

The only relevant facts, as opposed to conclusions or opinions, testified to by Lytle, were that when he first looked

in the direction of and saw the truck it was pulling out in the street so close that "we couldn't stop" and that the James vehicle was in his lane of travel at the moment of impact. Even as to these facts his testimony was not too specific, which is understandable in the light of his testimony to the effect that he was looking aside as they approached the intersection and had only a moment of opportunity to observe the events immediately preceding the collision.

Under the foregoing circumstances, we conclude that the plaintiff's testimony did not bar his recovery, as a matter of law, and there was no error on the part of the lower court in denying appellant's motion for judgement *n. o. v.*

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.