MONA ROBINSON COGDILL v. SUSAN WEEKS SCATES AND GEORGE THOMAS COGDILL

No. 64

(Filed 14 May 1976)

**Evidence § 34; Trial § 22— plaintiff's own unfavorable testimony — judicial admissions — defeat of claim — testimony by other witnesses**

A plaintiff under no disability who at trial (1) deliberately and unequivocally repudiated the allegations in the pleadings upon which

she based her claim for relief, and (2) testified to objective facts purportedly within her knowledge which utterly destroyed her case and exonerated defendant of any liability to her, will not be allowed to recover damages upon the testimony contra of other witnesses.

APPEAL by plaintiff under G.S. 7A-30(2) from the decision of the Court of Appeals reported in 26 N.C. App. 382, 216 S.E. 2d 428 (1975), which reversed the judgment for plaintiff against defendant Cogdill, entered by *Friday, J.*, at the 16 September 1974 Session of HAYWOOD Superior Court, docketed and argued as Case No. 60 at the Fall Term 1975.

Plaintiff, Mona Cogdill, instituted this action on 24 April 1974 against her husband, George Thomas Cogdill, and Susan Weeks Scates (Scates), to recover for personal injuries sustained on 2 May 1971 when the automobile driven by her husband, in which she was a passenger, collided with an automobile driven by Scates. In her complaint plaintiff alleged that she was injured by the concurrent negligence of both defendants. As to her husband, she averred he was negligent in that (1) he drove his car carelessly and recklessly, in wilful and wanton disregard of the rights and safety of others, and in a manner and at a speed likely to endanger persons and property on the highway; (2) he failed to keep a proper lookout, operated his car at an excessive speed and without having it under proper control; (3) he suddenly made a left turn across the highway without signaling; and (4) he drove his car while under the influence of alcoholic beverages.

Prior to trial, plaintiff settled her case against defendant Scates and took a voluntary dismissal with prejudice as to her.

In September 1972 Edna Reece Ruff, the owner-occupant of the car driven by defendant Scates, and Robert Reece, a passenger in the same vehicle, each instituted an action against defendant Scates and defendant Cogdill. They alleged they were injured by the concurrent negligence of the two defendants. In these actions the two defendants filed cross actions against each other for damages and for contribution. In Ruff's case, defendant Cogdill also filed a counterclaim against her as the owner-occupant of the vehicle which defendant Scates was driving.

Without objection the three actions growing out of the collision between Scates and Cogdill were consolidated for trial. When the matter came to trial, plaintiff Cogdill amended her

complaint against her husband by deleting therefrom the allegations that at the time of the collision he was operating his vehicle while intoxicated and in a manner so as to be guilty of careless and reckless driving.

At trial, plaintiffs Ruff and Reece presented evidence sufficient to support a finding that both drivers were negligent. In summary their evidence tended to show that immediately preceding the collision, the Scates vehicle was headed west on Balsam Road, a two-lane highway, and the Cogdill vehicle was traveling east. As the two vehicles approached Little Bill's Drive-In restaurant, located on the north side of Balsam Road, a third car recklessly pulled out in front of the Scates vehicle and headed in a westerly direction down Balsam Road. The Cogdill vehicle, which was traveling at an excessive rate of speed, swerved to the right to avoid the third car which apparently crossed the center line as it made its turn. The Cogdill vehicle skidded off the road, straightened up, and then reentered the highway at a 45-degree angle. Meanwhile the Scates vehicle also swerved to the left to avoid the third car. The Cogdill and Scates vehicles collided almost head-on in the center of the highway with both vehicles angled over the center line.

Immediately following the testimony of Scates, who (the record shows) "was presented as a witness for plaintiffs Ruff and Reece," plaintiff Cogdill was examined by the attorney for plaintiffs Ruff and Reece. On his direct examination she stated that as she and defendant Cogdill approached Little Bill's her husband gave a left turn signal, indicating his intention to turn into the entrance of the drive-in, and, while their car was "sitting still, waiting to turn into Little Bill's," the collision occurred. On cross-examination by her own attorney she said, "Prior to and at the time of the collision I was looking outside the right-hand side window. I know that our car was in its proper lane."

On cross-examination by the attorney for defendant Scates, Mrs. Cogdill admitted that she had signed, verified, and filed a complaint in the present action in which she had alleged (1) that her husband was driving while intoxicated; (2) that he was driving at a high and dangerous speed; and (3) that immediately preceding the collision he turned his automobile to the left across the highway without giving a proper signal.

At this point defendant Cogdill's attorney, Mr. Morris, took over the cross-examination. He sought to establish that Mrs.

Cogdill had never read her complaint and did not know what allegations it contained. Counsel for Scates objected, and the trial judge sustained objections to this line of questioning, apparently on the theory that she could not impeach the verification, in her complaint, which was "a judicial instrument . . . sworn to before a judicial officer," the clerk of the court. Mr. Morris was permitted to cross-examine Mrs. Cogdill in the absence of the jury. The record shows that, *inter alia,* questions were propounded and answered as follows:

"Q. . . . Mrs. Cogdill you didn't actually read this complaint before you signed it, did you?

. . . .

The witness: No, sir, I didn't have a chance.

. . . .

Q. As a matter of fact, if you had read it, you would not have stated that your husband was operating on the wrong side of the road would you?

A. No, sir.

Q. And if you had read the complaint, you would not have stated that he was driving at a high and dangerous rate of speed?

A. No.

Q. And you would not have stated that your husband was driving on the left side of the center of the road if you had read it, would you?

A. No.

Q. As a matter of fact, your husband was stopped at the time this accident occurred wasn't he?

A. Yes, sir.

Q. And he was stopped on his side of the road?

A. Yes, sir.

Q. And he was waiting to turn into the Little Bill's Drive-In?

A. Yes, sir.

Cogdill v. Scates

Q. And he was giving a signal of his intention to turn left, wasn't he?

A. Yes, sir.

Q. As a matter of fact he wasn't negligent in any way, was he?

A. No, sir.

The Court: Mr. Powell [plaintiff's attorney], I trust your client is aware of the penalty for perjury. If not, you better advise her."

Over Mr. Morris's objection, at this point plaintiff's attorney consulted with her "outside the record." She returned to testify that she did not know whether she swore to the complaint when she signed it in the clerk's office. Mr. Powell stated "for the record" that he prepared the complaint; that he sent it to Waynesville by another attorney, who was to file it; and that plaintiff apparently had not read it. More he could not say. Thereafter, after consultation with counsel, the court permitted plaintiff Cogdill to testify before the jury on cross-examination, in part, as follows:

"Q. Mrs. Cogdill, at the time that this accident occurred, your husband, driving the 1965 model Ford automobile, was stopped dead-still in the highway, wasn't he?

A. Yes, sir.

Q. And he was stopped on his side of the road, that is, to the right of the center line of Balsam Road, at the time the accident occurred?

A. Yes, sir.

Q. And he had been stopped there for several seconds, hadn't he?

A. Yes, sir.

Q. As a matter of fact, the reason he stopped was so that traffic traveling toward Balsam Gap could clear so that he could turn into Little Bill's Drive-In?

A. Yes, sir.

.   .   .   .

Cogdill v. Scates

Q. I say, at the time the accident happened, all of your husband's car was on the right-hand side of the road, right-hand side of the center line or southern half of Balsam Road, wasn't it?

A. Yes, sir.

Q. And he was not under the influence of any intoxicating beverages at the time was he?

A. No."

At this juncture in the trial counsel for defendant Cogdill asked plaintiff Cogdill the following questions on cross-examination; counsel for plaintiffs Ruff and Reece objected. Parentheses indicate the objection to that question was sustained and the answer was not given in the presence of the jury but was supplied later.

"Q. At the time of this accident, your husband was, immediately before, at least, your husband was driving at least 20 miles an hour along the highway there before he came to a stop, wasn't he?

A. Yes, sir.

Q. At the time the accident occurred, and immediately before that, your husband had control of his automobile, hadn't he?

A. Yes, sir.

Q. And at the time this accident occurred, your husband had such control over the automobile that he was able to stop it with the brakes?

A. (Yes, sir.)

Q. When he wanted to, and within a very reasonable distance, didn't he?

A. (Yes.)

Q. Your husband never turned from a direct line of traffic at the time of this accident—

A. (No.)

Q. —without giving a signal for it?

A. (No.)

Cogdill v. Scates

Q. At the time this accident occurred, your husband didn't turn his automobile across the opposing traffic lane without giving a signal, did he?

A. (No.)

Q. And at the time of this accident, your husband had not consumed any alcoholic beverages, had he?

A. (No.)

Q. You had been with him all day, hadn't you?

A. Yes, sir.

Q. He hadn't consumed any alcoholic beverages, had he?

Q. Well, you know, don't you, Mrs. Cogdill?

A. Yes, sir.

Q. As a matter of fact, your husband had not consumed any alcoholic beverages, had he?

A. No.

Q. Your answer is 'no'?

A. Yes.

Q. As a matter of fact, Mrs. Cogdill, there wasn't any way that your husband could have avoided that accident that occurred there, in this collision between his vehicle and the one operated by Susan Scates, could he?

A. (No.)

Q. And, as a matter of fact, before this collision occurred, and as your husband was approaching the place where he brought his vehicle to a stop, he never turned his vehicle across the center line, did he?

A. (No.)"

At the close of plaintiff Cogdill's evidence, defendant Cogdill presented his evidence which consisted of his own and other eyewitness testimony. In summary, this evidence tended to show that as defendant Cogdill approached Little Bill's Drive-In, he gave an appropriate left turn signal and slowed almost to a stop waiting for the on-coming traffic to clear so that he could

make his turn. As he was waiting to turn, the Scates vehicle drifted across the center line and struck his car head-on.

At the close of all the evidence defendant Cogdill moved for a directed verdict in his favor against plaintiff Cogdill. This motion was denied and twenty-one issues were submitted to the jury.

In an obviously inconsistent verdict the jury returned the following findings: (1) that plaintiff Cogdill was injured by defendant Cogdill's negligence in the amount of $40,000; (2) that plaintiff Reece was injured by the concurrent negligence of defendants Scates and Cogdill; (3) that plaintiff Ruff was injured by the concurrent negligence of Scates and Cogdill and the negligence of defendant Scates, as imputed to plaintiff Ruff as the owner of the vehicle driven by Scates, did not contribute to plaintiff Ruff's injuries; (4) that defendant Cogdill was injured by the negligence of defendant Scates and his own negligence did not contribute to his injuries; and (5) that defendant Scates was injured by defendant Cogdill's negligence, and her own negligence did not contribute to her injuries. Defendant's motions for judgment notwithstanding the verdict were denied and judgments were entered in accordance with the jury's verdict.

From the judgment that plaintiff Cogdill recover from him the sum of $40,000 defendant Cogdill appealed to the Court of Appeals. In a 2-to-1 decision that court reversed the judgment upon the holding that "plaintiff Cogdill is conclusively bound by her unequivocal testimony that her husband, defendant Cogdill, was not negligent in any way, that he was not driving in a reckless manner, that he was in his proper lane of traffic, either stopped or moving slightly, had given a proper signal for a left turn, and was waiting for traffic to clear." *Cogdill v. Scates*, 26 N.C. App. 382, 385-86, 216 S.E. 2d 428, 430 (1975).

From the decision of the Court of Appeals, plaintiff appealed as of right to this Court.

*Bruce A. Elmore and John A. Powell for plaintiff appellant.*

*Morris, Golding, Blue & Phillips for George Thomas Cogdill, defendant appellee.*

Cogdill v. Scates

SHARP, Chief Justice.

This appeal involves the question to what extent and under what circumstances a party is bound by his own adverse testimony in the trial of his case. This "has been characterized as one of the most troublesome questions in the law of evidence and has been the subject of much diversity of judicial opinion." 32A C.J.S. *Evidence* § 1040 (3) (1964). Specifically, the question here presented is: Upon the trial of an action, may a party under no disability who (1) deliberately and unequivocally repudiates the allegations in the pleadings upon which she has based her claim for relief, and (2) testifies to objective facts purportedly within her knowledge which utterly destroy her case and exonerate the adverse party of any liability to her, be allowed to recover damages upon the testimony contra of other witnesses?

Our research, and that of the parties, has not discovered any prior decision in which this Court has considered the effect of testimony by a party which, if true, would defeat his action when the testimony of other witnesses tends to establish his case.

Plaintiff argues that the case of *Arthur v. Henry,* 157 N.C. 393, 73 S.E. 206 (1911), stands for the proposition that a party's adverse admissions, given as testimony on the stand, are not to be accorded conclusive weight, for they are neither judicial admissions nor a retraxit. *Arthur v. Henry* was an action for damages to real property and injunctive relief. In that case the plaintiff and the defendant owned adjoining land. From June 1904 to October 1906 defendant operated a quarry on his land. Blasting in the quarry caused rocks and dust to be thrown upon the plaintiff's house and land. In February 1906 the defendant sought to negotiate a contract with the plaintiff whereby he could operate the quarry without liability. After "some bitter words between the parties" the defendant told the plaintiff he would "find a way to operate that quarry without being liable." In July 1906 the defendant leased the quarry to a corporation which operated it from the fall of 1906 until April 1907. After operations in the quarry were resumed in 1909 the plaintiff instituted an action against the defendant on 4 August 1909, alleging that the quarry constituted a nuisance and that the defendant had been out of the state from May 1906 to October 1907.

At trial the plaintiff testified "that he did not claim damages prior to 4 August 1906." The issue submitted was, "What amount of damages . . . for . . . acts committed after 4 March 1905, if any, is the plaintiff entitled to recover?" This issue was framed so as to permit the plaintiff to recover any damages sustained during the three years prior to the institution of the action, plus the time the defendant was out of the state. The jury answered all issues in favor of the plaintiff and, upon the defendant's appeal, the Court stated one of the questions to be: "Does the evidence of the plaintiff that he claimed no damages prior to August 1906, prevent a recovery of other damages, not barred by the statute of limitations?" *Id.* at 401, 73 S.E. at 209. Obviously, the answer to this question was NO. The Court, however, disposed of it in these words:

"Nor did the statement of the plaintiff on the witness stand, that he claimed no damages prior to 4 August 1906 prevent an inquiry as to all damages not barred by the statute of limitations.

"It is a statement which ought to have had weight with the jury, but it does not amount to a *retraxit,* and as a contract there is no mutuality and no consideration." *Id.* at 406, 73 S.E. at 211.

Defendant contends that the proper interpretation of the plaintiff's testimony in *Arthur v. Henry* is that the plaintiff had made no claim for damages prior to August 1906; that he did not say he had sustained no damages before then. We cannot tell from the statement of facts in the opinion what the plaintiff meant to say. However, even if his statement be construed as an intended waiver of damages occurring prior to 4 August 1906, it certainly was not a repudiation of his entire claim or a disavowal of the allegations of his complaint. The plaintiff's statement in *Arthur* is not comparable to the unequivocal testimony of plaintiff Cogdill by which she positively repudiated the complaint on which she based her action. *Arthur v. Henry,* therefore, is not dispositive of the question before us; nor does its terse and imprecise rationale aid decision here.

As heretofore noted, other courts and commentators have fully considered the effect of a party's own adverse testimony upon his right to recover. The cases are collected and analyzed in the following materials: Annot., *Binding effect of party's own unfavorable testimony,* 169 A.L.R. 798 (1947) and later

Cogdill v. Scates

case service volumes; 32A C.J.S. *Evidence* § 1040 (3); Mc-Cormick, Handbook of the Law of Evidence § 266 (2d Ed. 1972); IX J. Wigmore, Evidence, § 2594*a* (3d Ed. 1940).

The exposition of Professor McCormick is summarized, except when quoted, below:

If, while testifying, a party has made an admission which—if true—is fatal to his cause of action or defense, and it stands unimpeached and uncontradicted at the end of the trial, it is generally conclusive against him. "The controversal question is whether he is bound by his own testimony in the sense that he will not be allowed to contradict it by other testimony, or, if contradictory testimony has been received, the judge and jury are required to disregard it and to accept as true the party's self-disserving testimony, as a judicial admission." McCormick, *supra,* § 266.

The courts have taken three often overlapping approaches to the question. "First, the view that a party's testimony in this respect is like the testimony of any other witness called by the party, that is, the party is free (as far as any rule of law is concerned) to elicit contradictory testimony from the witness himself or to call other witnesses to contradict him. Obviously, however, the problem of persuasion may be a difficult one when the party seeks to explain or contradict his own words, and equally obviously the trial judge would often be justified in saying, on motion for directed verdict, that reasonable minds in the particular state of the proof could only believe that the party's testimony against his interest was true.

"Second, the view that the party's testimony is not conclusive against contradiction except when he testifies unequivocally to matters 'in his peculiar knowledge.' These matters may consist of subjective facts, such as his own knowledge or motivation, or they may consist of objective facts observed by him.

"Third, the doctrine that a party's testimony adverse to himself is in general to be treated as a judicial admission, conclusive against him, so that he may not bring other witnesses to contradict it, and if he or his adversary does elicit such conflicting testimony it will be disregarded. Obviously, this general rule demands many qualifications and exceptions. Among these are the following: (1) The party is free to contradict, and thus correct, his own testimony; only when his own testimony taken as a whole unequivocally affirms the statement

does the rule of conclusiveness apply. The rule is inapplicable, moreover, when the party's testimony (2) may be attributable to inadvertence or to a foreigner's mistake as to meaning, or (3) is merely negative in effect, or (4) is avowedly uncertain, or is an estimate or opinion rather than an assertion of concrete fact, or (5) relates to a matter as to which the party could easily have been mistaken, such as the swiftly moving events just preceding a collision in which the party was injured." *Id.*

Of these three approaches, it is McCormick's view that the first "seems preferable in policy and most in accord with the tradition of jury trials." The second, which binds the party only as to facts within his "peculiar knowledge," is based on the doubtful assumption that as to such facts the possibility that he may be mistaken is insubstantial. "There are few, if any subjects, on which plaintiffs [parties] are infallible." The third, which purports to apply the rule of conclusiveness, was probably the result of judicial outrage engendered by the "seeming attempts by parties to play fast and loose with the court." However, experience shows that it is not the unscrupulous party who is punished by it but "the one who can be pushed into an admission by the ingenuity or persistence of adverse counsel, or the unusually candid or conscientious party willing to speak the truth to his own hurt." A party's testimony, "uttered by a layman in the stress of examination, cannot with justice be given the conclusiveness of the traditional judicial admission in a pleading or stipulation, deliberately drafted by counsel for the express purpose of limiting and defining the facts in issue." Further, a general rule of conclusiveness, leads to mechanical solutions, unrelated to the needs of justice, and breeds exceptions "calculated to proliferate appeals" in situations better left to the judgment of the jurors or the judge, as the case may be. The views of Professor McCormick are also those of Dean Wigmore. *See* IX J. Wigmore, Evidence § 2594a (3d Ed. 1940).

For full discussions of the three approaches listed by Mccormick see: *Sholly v. Annan,* 450 F. 2d 74 (9th Cir. 1971); *Bolam v. Louisville & Nashville R. R.,* 295 F. 2d 809 (6th Cir. 1961); *Alamo v. Del Rosario,* 98 F. 2d 328 (D.C. Cir. 1938); *Kanopka v. Kanopka,* 113 Conn. 30, 154 A. 144 (1931); *Elpers v. Kimball,* 366 S.W. 2d 157 (Ky. App. 1963); *Hill v. West End St. Ry.,* 158 Mass. 458, 33 N.E. 582 (1893); *Bradshaw v. Stieffel,* 230 Miss. 361, 92 So. 2d 565 (1957); *Vermaas v.*

*Heckel,* 170 Neb. 321, 102 N.W. 2d 647 (1960); *Harlow v. Leclair,* 82 N.H. 506, 136 A. 128 (1927); *Bailey v. Mead,* 260 Ore. 410, 492 P. 2d 798 (1972); *Lytle v. Reagan,* 256 S.C. 269, 182 S.E. 2d 302 (1971). In addition see Note, 5 Western Reserve L. Rev. 398 (1954).

After considering the three approaches to the problem of a party's "self-disserving" testimony, it is our opinion that the facts of this case do not require us to adopt any one of them, and it would, therefore, be inappropriate for us to attempt to formulate a general rule for determining the circumstances under which a party's adverse testimony will defeat his action.

Mrs. Cogdill testified to concrete facts, not matters of opinion, estimate, appearance, inference or uncertain memory. Her testimony was deliberate, unequivocal and repeated. It left no room for the hypothesis of mistake or slip of the tongue. Her statements were diametrically opposed to the essential allegations of her complaint and destroyed the theory upon which she had brought her action for damages. They clearly indicated her intentions not only to renounce her suit, but to acknowledge that she had never had a cause of action against her husband.

As set out in the preliminary statement, plaintiff testified on *voir dire* that she never read the complaint she verified; that had she read it she would never have stated her husband was operating his automobile in the manner alleged therein; and that he was not negligent in any way. Even after being warned of the consequences of perjury, she testified before the jury deliberately, unequivocably, and persistently that at the time of the collision her husband, having given the proper turn signal, was in his proper lane awaiting the opportunity to make a turn. Thereafter her attorney did not seek to elicit any remedial testimony from her. Instead, in the absence of the jury, he assured the court that, although he was not present when Mrs. Cogdill signed the verification to her complaint, if she said she did not read it, she didn't read it.

A civil action is ordinarily commenced by filing with the court a complaint, which "shall contain" a short and plain statement of the claim "sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing the pleader is entitled to relief, and a demand for judgment

for the relief to which he deems himself entitled." G.S. 1A-1, Rules 3 and 8. If, at the close of the evidence, a plaintiff's own testimony has unequivocally repudiated the material allegations of his complaint and his testimony has shown no additional grounds for recovery against the defendant, the defendant's motion for a directed verdict should be allowed.

Even Professor McCormick, the chief exponent of the liberal view that generally a party should not be concluded by his adverse testimony, recognized that in some situations a court would be fully justified in giving a party's adverse testimony the effect of a judicial admission. He wrote: "This much, however, should be conceded, even under the liberal view. . . . [I]f a party testifies deliberately to a fact fatal to his case, the judge if his counsel, on inquiry, indicates no intention to seek to elicit contradictory testimony, may give a nonsuit or directed verdict. Under these circumstances, the party and his counsel advisedly manifest an intention to be bound." McCormick, *supra* at page 638, n. 82.

The circumstances of this case come well within the McCormick concession. In our view, to permit plaintiff Cogdill's judgment against defendant Cogdill to stand would be *contra bonos mores* and a violation of public policy. The Court of Appeals correctly held that defendant's motion for a directed verdict should have been allowed.

Two final comments seem appropriate. The three cases which were consolidated for trial grew out of the same two-car collision. They were tried together because all the claimants were injured in one and the same accident. The jury's extraordinary verdicts, which permitted passengers to recover from the drivers of both vehicles and the drivers to recover from each other, clearly indicate that the jurors never saw the cases whole or understood the applicable law. Indeed, they seem to have assessed damages on the theory they were dividing the proceeds of no-fault insurance policies.

Confusion might have been avoided if the issues relating to liability had been reduced to the following: (1) Was the negligence of Cogdill a proximate cause of the collision between his automobile and the automobile driven by Scates? (2) Was the negligence of Scates a proximate cause of the collision between the Ruff automobile which she was driving and the automobile driven by Cogdill? (3) Was Scates operating the Ruff

automobile as the agent of Ruff? (On this third issue a peremptory instruction on the uncontradicted evidence would have been appropriate.)

The remaining five issues would have related to the damages, if any, each claimant was entitled to recover on account of injuries sustained as a result of the collision. Whether the jury would have considered none or only some of these issues would have depended upon their answers to issues (1) and (2). Issue (3) would have been material only if issue (2) had been answered YES.

For the reasons stated the decision of the Court of Appeals remanding this case to the Superior Court for entry of judgment allowing defendant Cogdill's motion for a directed verdict is

Affirmed.