CANDY CALVIN BODY, INDIVIDUALLY AND AS GUARDIAN FOR CALEB BODY, PLAINTIFFS v. DEBRA VARNER AND RONALD G. BODY, DEFENDANTS

No. 9110SC693

(Filed 4 August 1992)

**Evidence and Witnesses § 1017 (NCI4th)— automobile accident — adverse deposition testimony by party — binding**

Summary judgment was properly granted for defendant Ronald Body in an automobile accident case where deposition testimony by plaintiff Candy Body unequivocally repudiated any claim for negligence against that defendant. While the general rule is that adverse deposition testimony is evidentiary in nature, and thus subject to contradiction by other testimony and other witnesses, this testimony is unequivocal and unambiguous in its repudiation of the complaint's second cause of action, amounts to a judicial admission, and is conclusively binding on plaintiffs. There is no legal basis to distinguish the case from *Cogdill v. Scates*, 290 N.C. 31.

**Am Jur 2d, Evidence §§ 615, 616.**

APPEAL by plaintiffs from summary judgment order dismissing the plaintiffs' claims for damages against defendant Body. This order was entered 18 April 1991 by *Judge Jack A. Thompson* in WAKE County Superior Court. Heard in the Court of Appeals 12 May 1992.

*Chocklett & Currin, by Gregory P. Chocklett, for plaintiffs-appellants.*

*Law Offices of Robert E. Smith, by Robert E. Smith, for defendant-appellee Ronald G. Body.*

LEWIS, Judge.

Plaintiff Candy Body brought this action in Wake County Superior Court in her individual capacity and as guardian for her minor son, Caleb, to recover damages resulting from an automobile accident. Defendant Ronald G. Body, Candy Body's husband, moved for and was granted a summary judgment in the negligence suit. Plaintiffs appeal the order of summary judgment.

BODY v. VARNER

[107 N.C. App. 219 (1992)]

On 14 February 1989, plaintiffs Candy and Caleb Body were passengers in a Toyota automobile driven by defendant Ronald Body. The Body vehicle was traveling westbound on Highway 97 heading towards Raleigh. The vehicle immediately ahead of the Body car and also traveling in a westerly direction on Highway 97 was a Dodge Caravan operated by defendant Debra Varner. Plaintiff Candy Body testified at her deposition that she first noticed the Varner vehicle when it was approximately a half a mile ahead, and she noticed the vehicle was moving at a "slow pace."

Plaintiff Body deposed that defendant Ronald Body momentarily slowed down behind the Varner vehicle, and "when she [Varner] did not accelerate, then that's when he [defendant Body] moved over to pass." However, as the Body automobile was passing in the left lane, Varner attempted to make a left turn into her driveway. The two vehicles collided.

Plaintiffs alleged negligence against the drivers of both vehicles. Plaintiffs allege that defendant Varner was negligent by, among other actions, turning without first signaling or otherwise giving warning of her intent to do so, in violation of N.C.G.S. § 20-154 (1989). Plaintiffs' second cause of action in their complaint alleges defendant Body negligently operated his vehicle when he: failed to keep a proper lookout and keep his vehicle under proper control; operated his vehicle at a speed greater than reasonable and prudent under the circumstances pursuant to N.C.G.S. § 20-141(a) (1989); operated his vehicle without due caution and circumspection and at a speed and in a manner so as to endanger persons and property in violation of N.C.G.S. § 20-140(b) (1989); failed to decrease the speed of his vehicle in order to avoid a collision in violation of N.C.G.S. § 20-141(m) (1989); passed a vehicle when it was not reasonably safe to do so, in violation of N.C.G.S. § 20-150 (1989); failed to operate his vehicle on the proper half of the roadway in violation of N.C.G.S. § 20-146 (1989); and generally failed to exercise due care in the operation of his vehicle.

Plaintiffs contend that the defendants were concurrently negligent and that the concurrent negligence was the direct and proximate cause of the collision and the injuries sustained therefrom. Upon his motion, the lower court granted summary judgment in favor of defendant Body.

As a threshold consideration, we note that in negligence cases, the issues " 'are ordinarily not susceptible of summary adjudication

because application of the prudent man test, or any other applicable standard of care, is generally for the jury.' " *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. rev. denied*, 327 N.C. 140, 394 S.E.2d 177 (1990) (quoting *Taylor v. Walker*, 320 N.C. 729, 734, 360 S.E.2d 796, 799 (1987)).

During cross-examination on deposition, defendant Body's attorney asked plaintiff Candy Body if there was "anything about Mr. Body's driving that caused you any concern?" She responded in the negative. She also testified that defendant Body's driving was "normal." Defendant Varner's attorney queried plaintiff Body, "What could Mr. Body have done to avoid the accident?," to which she answered:

> To be honest with you, I don't know. I mean once he moved into the passing lane he couldn't have gone back into the other lane because she was there turning. He couldn't have gone to the left because there was a ditch. We tried to stop, that was the only thing we could do. So in my opinion he did everything he could do to avoid it.

Later, plaintiff Body was asked by defendant Varner's attorney:

> What is the basis for your allegations in your lawsuit, that [defendant Body] failed to keep a proper lookout, that he . . . failed to keep his vehicle under proper control, that he operated at a greater speed than was reasonably prudent, that he operated his vehicle without due caution and circumspection and at a speed in the manner as to endanger personal property. Do you have any evidence to support those allegations?

Plaintiff Body responded, "No."

Defendant Varner's attorney also elicited the following testimony from plaintiff Body:

> Q. So under the circumstances is it your opinion that he [defendant Body] was driving too fast for the conditions as he was passing?
>
> A. No.
>
> Q. As far as you know was he keeping a proper lookout?
>
> A. Yes.

Q. Did he ever lose control of the car at any time before the accident?

A. No.

Q. Was the area where he was passing, was it a passing zone?

A. Yes, it was.

Q. Was it unsafe for him to pass at the time he started passing?

A. In my opinion, no. There were no oncoming cars. . . . .

Q. Did he signal his intent to pass before he actually started his passing movement?

A. Yes.

Q. How did he do that?

A. He turned on the left turn signal.

Plaintiff Body even testified that had defendant Body blown his horn, "he would have . . . made some noise, but we would have still hit the van." When asked point-blank whether plaintiff Body had any evidence to support the allegations of negligence on the part of her husband, she answered simply, "No."

The question at issue is to what extent and under what circumstances is a party bound by her own adverse testimony. Defendant Body contends that the above statements completely absolve him of all liability in the accident. The trial court agreed, and we affirm. We hold that plaintiffs are bound by these statements voluntarily made and sworn to by plaintiff Body because the statements unequivocally repudiate any claim for negligence they held against that defendant and cited in their complaint's second cause of action.

This Court first addressed this question in a 1975 case, *Cogdill v. Scates*, 26 N.C. App. 382, 216 S.E.2d 428 (1975), *aff'd*, 290 N.C. 31, 224 S.E.2d 604 (1976). In *Cogdill*, plaintiff had been a passenger in a car driven by her husband. The car crashed head-on with another automobile, and plaintiff brought actions for damages against both drivers. In her verified complaint, plaintiff alleged various reasons why her husband had been negligent. However, at trial, plaintiff testified that her husband was " 'not negligent, in any way, as far as this accident was concerned.' " *Id.* at 384, 216 S.E.2d at 429.

Our Supreme Court, in affirming *Cogdill,* discussed three approaches courts have taken when deciding to what extent a party is bound by his own adverse testimony in the trial of his case. *Cogdill v. Scates,* 290 N.C. 31, 41-42, 224 S.E.2d 604, 610 (1976). The first position treats adverse testimony by a party as essentially an evidentiary admission. Under this view, the testimony, once elicited, is subject to contradiction by other testimony and other witnesses. *Id.* at 41, 224 S.E.2d at 610 (citing McCormick, *Handbook of the Law of Evidence* § 266 (2d ed. 1972)).

The second basic approach treats these statements as " 'not conclusive against contradiction except when he testifies unequivocally to matters in his peculiar knowledge.' " *Id.* The third approach treats the adverse testimony as a judicial admission, conclusive and binding against the party. *Id.*

The Court in *Cogdill* did not adopt any of the approaches. Instead, given the facts of the case, the court found it dispositive that plaintiff's testimony was "deliberate, unequivocal and repeated. . . . Her statements were diametrically opposed to the essential allegations of her complaint and destroyed the theory upon which she had brought her action for damages." *Id.* at 431, 224 S.E.2d at 611. The directed verdict was affirmed in favor of the defendant.

In *Woods v. Smith,* 297 N.C. 363, 255 S.E.2d 174 (1979), the Supreme Court reversed the summary judgment because it held that deposition testimony of the plaintiff, which gave some indication that defendant was not negligent, was distinguishable from the trial testimony in *Cogdill.* The Court found that plaintiff's testimony in *Woods* demonstrated merely a "continuing *uncertainty*" as to defendant's liability in the negligence action, *id.* at 372, 255 S.E.2d at 180 (emphasis original), and that plaintiff's deposition statements were "equivocal, uncertain, and inconsistent, and [the] narrow holding in *Cogdill* does not apply." *Id.* at 373, 255 S.E.2d at 181.

The court went on to adopt the first approach articulated in *Cogdill.*

> Under this approach a party's statements, given in a deposition or at trial of the case, are to be treated as evidential admissions rather than as judicial admissions. . . .

. . . .

Thus, when a party gives adverse testimony in a deposition or at trial, that testimony should not, in most instances, be conclusively binding on him. . . . Two exceptions to this general rule should be noted, however. First, when a party gives unequivocal, adverse testimony under factual circumstances such as were present in *Cogdill*, his statements should be treated as binding judicial admissions rather than as evidential admissions.

*Id.* at 373-74, 255 S.E.2d at 181. The second exception noted by the Court is not applicable to the case at bar.

While recognizing the general rule of adverse testimony as being evidentiary in nature, we hold that, under the facts of this case, the application of the first exception, as stated above, is clearly appropriate. Upon careful review of plaintiff Candy Body's deposition testimony, we conclude that her statements unequivocally repudiated the allegations raised in their complaint as concerns defendant Body.

We find this testimony unequivocal and unambiguous in its repudiation of the complaint's second cause of action. We find no legal basis to distinguish this case from *Cogdill*. These statements amounted to a judicial admission and are conclusively binding on plaintiffs. We affirm the award of summary judgment in favor of defendant Body.

Affirmed.

Judges WYNN and WALKER concur.