## CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

KIRSTEN CAMPBELL, PLAINTIFF v. BOBBY EUGENE INGRAM AND LASHAWNTA
ANNETTE McLAURIN, DEFENDANTS

No. COA05-1516

(Filed 21 November 2006)

**Motor Vehicles— action by vehicle passenger against both drivers in collision—inference of negligence—directed verdict incorrect**

> An accident occurring between two cars in a lane designed for one creates an inference that one or both of the drivers were negligent, but a finding of negligence is not compelled as there may be evidence that neither driver was negligent. The trial court here, in an action by a passenger in one of two cars that collided, erroneously granted directed verdicts for both drivers. There was sufficient evidence to determine whether at least one of the drivers was negligent.

> Judge TYSON dissenting.

Appeal by Plaintiff from judgment entered 13 May 2005 and order entered 9 June 2005 by Judge Richard T. Brown in District Court, Scotland County. Heard in the Court of Appeals 15 August 2006.

*Gordon, Horne, Hicks and Floyd, P.A., by William P. Floyd, Jr., for plaintiff-appellant.*

*Teague, Rotenstreich & Stanaland, LLP, by Paul A. Daniels, for defendant-appellee Bobby Eugene Ingram.*

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Robert A. Hasty, Jr., for defendant-appellee Lashawnta Annette McLaurin.*

WYNN, Judge.

This appeal arises from a grant of a directed verdict in favor of Defendants Lashawnta Annette McLaurin and Bobby Eugene Ingram based on the alleged failure of Plaintiff Kirsten Campbell to produce sufficient evidence for a jury to determine if either or both defendants were negligent. For the reasons given in *Racine v. Boege*, 6 N.C. App. 341, 169 S.E.2d 913 (1969) and *Griffeth v. Watts*, 24 N.C. App. 440, 210 S.E.2d 902 (1975), we reverse.[1]

---

1. We reject the dissent's characterization that the majority opinion "omits relevant testimony and evidence presented at trial." While the dissent charges that the

On 23 April 1999, Ms. Campbell rode as a passenger in a vehicle driven by Ms. McLaurin as it traveled south on South Main Street in High Point—a five-lane highway with two south bound lanes, two north bound lanes and a center turn lane. At approximately 3:45 p.m., the vehicle driven by Ms. McLaurin collided with a vehicle driven by Mr. Ingram when the McLaurin vehicle entered the center lane. Ms. Campbell heard a loud "boom" when the vehicles collided and saw the Ingram vehicle stopped directly to the left side of the McLaurin vehicle. Both vehicles faced south following the accident.

On 15 October 1999, Ms. Campbell brought an action against Mr. Ingram, who in turn answered and bought a third-party action against Ms. McLaurin. Thereafter, Ms. Campbell amended her complaint to include Ms. McLaurin as a defendant, alleging joint and several liability for her injuries. In response, Ms. McLaurin answered both complaints and brought a cross-claim against Mr. Ingram.

At the close of Ms. Campbell's evidence, Mr. Ingram and Ms. McLaurin moved for, and the trial court granted, directed verdicts pursuant to Rule 50 of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 50 (2005). Thereafter, the trial court denied Ms. Campbell's motion for a new trial under N.C. Gen. Stat. § 1A-1, Rule 59 (2005).

Upon Ms. Campbell's appeal to this Court from the grant of a directed verdict against her, we note that,

> The standard of review for a motion for directed verdict is whether the evidence, considered in the light most favorable to the non-moving party, is sufficient to be submitted to the jury. A motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim. This Court reviews a trial court's grant of a motion for directed verdict *de novo*.

majority omits relevant evidence, it is not pertinent to the issue in this case that the Plaintiff "had never been in an accident before," did not have insurance, and did not want to "run up a bill" at the emergency room. Those facts are irrelevant to the determination of the issue of whether a jury could find that at least one of the two drivers negligently caused the collision.

However, there are facts that are agreed upon by the majority and the dissent: a collision occurred between two vehicles in the center lane of a five-lane highway, and this Plaintiff, a passenger in one of the vehicles, sued *both* drivers. We also agree that nothing indicates Plaintiff was contributorily negligent in causing this accident.

*Herring v. Food Lion, LLC*, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005) (internal citations omitted), *aff'd per curiam* 360 N.C. 472, 628 S.E.2d 761 (2006). A plaintiff must "offer evidence sufficient to establish, beyond mere speculation or conjecture, every essential element of negligence. Upon his failure to do so, a motion for a directed verdict is properly granted." *Oliver v. Royall*, 36 N.C. App. 239, 242, 243 S.E.2d 436, 439 (1978).

In her appeal, Ms. Campbell argues that she produced more than sufficient evidence to allow a jury to determine whether either of the two defendants were negligent. Indeed, the record shows Ms. Campbell rode as a passenger in the McLaurin vehicle as it traveled south on a highway in High Point on a sunny, clear day. She described the road as flat with five lanes, two north bound, two south bound, and a center turning lane. Using a diagram of the highway, she described the point at which the McLaurin vehicle entered the center lane in an attempt to turn into the parking lot of Wendy's restaurant. Upon entering the lane, the McLaurin vehicle collided with a vehicle driven by Ingram. According to Ms. Campbell, she did not see the Ingram vehicle until after the collision, but she knew the Ingram vehicle was not in front of the McLaurin vehicle. She also testified that Ingram told the investigating police officer that he was attempting to turn into "the fish place, which would have been right before you get to Wendy's." Though Ms. Campbell did not see the Ingram vehicle before the collision, her testimony is unequivocal that the collision only involved the McLaurin and Ingram vehicles.

In support of her argument that the record shows sufficient evidence to allow a jury to determine that either or both Defendants were negligent, Ms. Campbell cites *Racine v. Boege*, 6 N.C. App. 341, 169 S.E.2d 913 (1969) and *Griffeth v. Watts*, 24 N.C. App. 440, 210 S.E.2d 902 (1975).

In *Racine*, the plaintiff brought a negligence action against the driver who struck plaintiff's vehicle from behind. 6 N.C. App. at 342, 169 S.E.2d at 914. The facts of that case indicate the plaintiff "presented no direct evidence as to the manner in which defendant was operating his vehicle at the time of the collision; he was himself the only eyewitness who testified to the actual collision, and he neither saw nor heard defendant's truck before the collision occurred." *Id.* at 344-45, 169 S.E.2d at 915. Thus, this Court addressed the issue of whether "the fact that defendant's truck collided with the vehicle ahead of it provided by itself sufficient evidence of negligence on the part of the defendant to require submission of that issue to the jury."

*Id.* at 345, 169 S.E.2d at 916. In reversing the trial court's grant of nonsuit in favor of the defendant, this Court relied upon long-standing common law that " '[o]rdinarily the mere fact of a collision with a vehicle ahead furnishes some evidence that the following motorist was negligent as to speed, was following too closely, or failed to keep a proper lookout.' " *Id.* at 345, 169 S.E.2d at 916 (quoting *Clark v. Scheld*, 253 N.C. 732, 737, 117 S.E.2d 838, 842 (1961)). Thus, the Court concluded:

> While it is entirely possible that the defendant in the present case was exercising every care which a reasonable and prudent driver would have exercised under the circumstances confronting him, and while certainly the evidence does not compel any finding of negligence on his part, we hold that under all of the circumstances there was sufficient evidence to require that the jury determine the issue . . . .

*Id.* at 346, 169 S.E.2d at 917.[2]

In *Griffeth*, this Court addressed a similar issue in which the plaintiff "testified at trial that she was stopped in the left lane of traffic, about to turn left onto Hillside Avenue, when defendant's car struck her car in the rear." 24 N.C. App. at 441, 210 S.E.2d 903. As in *Racine*, the plaintiff in *Griffeth* presented no direct evidence as to the manner in which the defendant was operating his vehicle at the time of the collision:

> In the case at bar, the evidence, taken in the light most favorable to plaintiff, tends to show that plaintiff was stopped and had been stopped on Park Road "for quite a while" with her left turn signal on; that traffic was heavy, and she was waiting for an .opportunity to turn; that the road may have been wet; that plaintiff heard a loud horn, glanced into the rear-view mirror and may

---

2. The dissent states that the majority "holds a reasonable inference of Ingram's and McLaurin's negligence can be inferred *solely* from the fact an accident occurred." (Emphasis supplied). Neither our holding nor the holdings of *Racine* and *Griffeth* are that simplistic. In this case as in *Racine* and *Griffeth*, Plaintiff described the *circumstances* of the accident but was unable to describe the *manner* in which each driver drove. The inference created by that testimony is one drawn from common sense—an accident occurring between two cars on a clear day in a lane designed for one car creates an inference that one or both of the drivers were negligent. But that inference does not compel a finding of negligence, as there may in fact be evidence showing that neither driver was negligent. Indeed, "it is entirely possible that the defendant[s] in the present case [were] exercising every care which a reasonable and prudent driver would have exercised under the circumstances confronting him . . . ." *Racine*, 6 N.C. App. at 346, 169 S.E.2d at 917.

CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

have seen defendant's car moving forward; and that the impact was substantial.

*Id.* at 443, 210 S.E.2d at 904. Based on this evidence, this Court allowed the issue of negligence to go to the jury.

Analyzing the holdings of *Racine* and *Griffeth*, it is significant that in *Racine*, the plaintiff passenger only sued the driver of the vehicle colliding with the vehicle in which she rode, and in *Griffeth*, the plaintiff was the driver of the vehicle rear-ended by the defendant. The facts of this case compel the same result as *Racine* and *Griffeth* even more so because the plaintiff passenger in this case brought an action against *all* of the actors involved in the collision. Moreover, as in the precedent cases, the plaintiff here provided physical evidence of the collision.

We find it dispositive that this Court did not require the plaintiffs in *Racine* and *Griffeth* to present direct evidence as to the manner in which the defendants operated their vehicles at the time of the collisions. We are further persuaded that under the facts of this case, where passenger Plaintiff brought all actors in the collision that occurred in a center turning lane designed to accommodate only one car at a time into an action for negligence, with no evidence to indicate anything other than at least one of the two drivers caused the collision, sufficient evidence exists to allow a jury to determine whether at least one of those drivers was negligent.

To put it succinctly, in the paraphrased language of *Griffeth*—it may well be within the realm of possibilities that both Defendant drivers were exercising every care which a reasonable and prudent driver would have exercised under the circumstances confronting them; nonetheless, reasonable and prudent men in the exercise of impartial judgment might reach a different conclusion. *Id.* It follows that the evidence in this case is sufficient to allow jurors to decide whether either or both of the drivers of the two cars involved in the collision in this matter were negligent.

We note in passing that the dissent cites *Harris v. McLain*, 12 N.C. App. 404, 183 S.E.2d 281 (1971) as "controlling and binding precedent" despite the fact that *Racine* was decided in 1969 and *Griffeth* in 1975. Indeed, the analysis by the dissent fails to recognize the distinguishing fact that the plaintiff in *Harris* chose not to sue the driver of the vehicle in which she rode; instead, she sued only the driver of the other vehicle. *Harris* does not address the issue in this

case, which would have arisen in that case if the plaintiff had sued both drivers and the court decided to nonsuit her as to both drivers.

Moreover, the holdings of *Racine* and *Griffeth* do not create, as the dissent would hold, a special category for analyzing negligence in rear-end collisions. Instead, the general principles of negligence are applicable to all collisions occurring where the Plaintiff describes the circumstances of the accident. The issue is not whether there are weather or road conditions that "place a prudent driver on notice to exercise greater care"; instead, regardless of the road conditions, all drivers are held to the standard of exercising every care which a reasonable and prudent driver would have exercised under the circumstances confronting him or her. *Racine*, 6 N.C. App. at 345, 169 S.E.2d at 916.

It is significant to point out that the dissent would require passengers who claim injuries from vehicular accidents to be able to describe the manner in which defendants operated their vehicles at the time of the collisions. The logic of that conclusion would mean that where there are no other witnesses to a vehicular accident, a passenger who was asleep at the time of an accident could not recover damages for injuries suffered as a result of a collision between two or more vehicles. Recognizing this absurdity over thirty years ago, *Racine* and *Griffeth* rejected it, and *Harris* never got to answer it since it was not the issue in that case.

As we have determined that the facts of this case were sufficient to allow a jury to determine the issue of negligence, if any, we summarily reject Defendant's argument that Plaintiff repudiated the allegations in her complaint.

Reversed.

Judge HUDSON concurs.

Judge TYSON dissents in separate opinion.

TYSON, Judge, dissenting.

The majority's opinion erroneously reverses the trial court's judgment granting defendants Bobby Eugene Ingram's ("Ingram") and Lashawnta Annette McLaurin's ("McLaurin") (collectively, "defendants") motions for directed verdict. The majority's opinion cites *Racine v. Boege*, 6 N.C. App. 341, 169 S.E.2d 913 (1969), and *Griffeth*

*v. Watts*, 24 N.C. App. 440, 210 S.E.2d 902 (1975), to support its holding that the evidence in this case is sufficient to allow jurors to decide whether either or both Ingram and McLaurin were negligent. In the absence of a *prima facie* showing of negligence by Kirsten Campbell ("plaintiff"), I vote to affirm the trial court's judgment granting defendants' motions for directed verdict, and I respectfully dissent.

The majority's conclusion to reverse the trial court is error because: (1) the evidence presented by plaintiff was insufficient to establish a *prima facie* case of negligence by either or both defendants to submit this case to the jury based on prior precedent, *Harris v. McLain*, 12 N.C. App. 404, 405, 183 S.E.2d 281, 282 (1971) ("It is manifest that the evidence was insufficient for submission to the jury."); (2) the facts of *Racine* and *Griffeth* are easily distinguished from this case and do not control the result here; and (3) plaintiff's testimony unequivocally repudiated the allegations asserted in her complaint.

## I. Background

The majority opinion's rendition of the facts omits relevant testimony and evidence presented at trial. Plaintiff was a front seat passenger in McLaurin's vehicle as it traveled south on South Main Street in High Point, en route to Laurinburg on 23 April 1999. Where the collision occurred, South Main Street is a non-divided five lane roadway with two southbound lanes, two northbound lanes, and a center turn lane. The weather was clear. The road was level with unobstructed visibility.

At approximately 3:45 p.m., the vehicles driven by Ingram and McLaurin collided in the center turn lane. Plaintiff testified McLaurin engaged her left turn signal prior to executing a left turn across the northbound lane, looked to her left, and entered the center turn lane. Plaintiff heard a loud "boom" when the vehicles collided. Plaintiff saw Ingram's vehicle stopped directly to the left side of McLaurin's vehicle, both vehicles facing south.

After the collision, Ingram and McLaurin moved their vehicles into a Wendy's Restaurant parking lot located across the northbound lane from the point of impact. Ingram retrieved McLaurin's front bumper cover from the street. Plaintiff observed fluids leaking from McLaurin's car and smoke rising from under the hood.

Ingram asked plaintiff and McLaurin if either of them were injured. Plaintiff was the only person who later asserted physical

injuries allegedly sustained during the collision. Plaintiff complained she suffered from a stiff neck and became "scared, shocked, [and] real nervous because [she] had never been in an accident before[.]"

Plaintiff also testified she overheard a conversation between Ingram and the police officer on the scene. Ingram stated he was making a left turn into a fish restaurant located beside the Wendy's Restaurant when his vehicle came into contact with McLaurin's vehicle. The officer also questioned McLaurin and plaintiff. Subsequent to the conversations with the investigating officer, plaintiff and McLaurin continued their trip toward Laurinburg.

After arrival in Laurinburg, plaintiff began to complain of neck and lower back pain. Plaintiff did not seek medical attention until 27 April 1999, four days after the accident. Plaintiff testified the reason she did not seek medical treatment for her alleged injuries was because she did not possess medical insurance and did not want to "run up a bill" at the emergency room.

Plaintiff sought and received treatment from Dr. Angelo J. Sabella ("Dr. Sabella"), a chiropractor, four days following the collision. Dr. Sabella informed plaintiff that "tissues in her neck were torn." Dr. Sabella treated plaintiff several times a week for approximately two months. These treatments consisted of neck and lower back exercises and exposing plaintiff's neck to a machine. After completing treatment with Dr. Sabella on 22 June 1999, plaintiff did not experience further medical problems.

On 15 October 1999, plaintiff filed suit in Scotland County against Ingram seeking compensation in the amount of $9,500.00. On 20 December 1999, Ingram answered plaintiff's complaint and filed a third-party complaint against McLaurin, which she answered on 28 February 2000. On 10 May 2005, plaintiff amended her complaint to include McLaurin as a defendant, alleging joint and several liability for her injuries. On 10 May 2005, McLaurin answered plaintiff's amended complaint and filed a cross-claim against Ingram.

Plaintiff and Dr. Sabella were the only witnesses at trial. During cross-examination, plaintiff testified she signed documents prior to being treated by Dr. Sabella. These documents stated if plaintiff received compensation, plaintiff would reimburse Dr. Sabella for treatment she had received. Plaintiff also testified she did not retain counsel until after treatment with Dr. Sabella concluded and her injuries had resolved.

CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

During cross-examination, plaintiff testified:

Q. Did you see Ms. McLaurin do anything wrong that day?

A. No, not to my knowledge. I was looking at the way she was looking for traffic coming the other way, coming around. She turned on her signal light and proceeded to turn and before she could—you know, in the process of turning it was just a boom . . . .

Q. And you do not know of anything that Mr. Ingram did that day to cause the collision, do you?

A. No, sir.

Q. I think you testified that you are not aware of anything Ms. McLaurin did that day to cause the accident; is that correct?

A. Correct.

Q. So all you are aware of or all that you know, is that you were in a car that came into contact with another car.

A. Well, I know that she got in the turning lane to get over and—

Q. Earlier you said that you weren't aware of anything she did wrong; is that correct?

A. Um-hum.

Q. You also said that you are not aware of anything Mr. Ingram did wrong; is that correct?

A. Correct.

Q. The only thing that you know as you sit here today is that you were a passenger in a car that came into contact with another car?

A. Um-hum.

Q. Is that correct?

A. Correct.

Plaintiff was also asked later during cross-examination, "Now, you testified that you don't know of anything that Mr. Ingram did wrong and you don't know of anything Ms. McLaurin did wrong. Is that correct?" Plaintiff responded, "Correct."

At the close of plaintiff's evidence, defendants moved for, and the trial court granted directed verdicts pursuant to Rule 50 of the North Carolina Rules of Civil Procedure.

Plaintiff moved for a new trial pursuant to Rule 59 of the North Carolina Rules of Civil Procedure on the grounds that defendants' motions for directed verdicts were improperly granted. The trial court denied plaintiff's motion. Plaintiff appeals and argues the trial court erred in granting defendants' motions for directed verdict and denying her motion for a new trial.

## II.  Standard of Review

The standard of review for a motion for directed verdict is whether the evidence, considered in the light most favorable to the non-moving party, is sufficient to be submitted to the jury. A motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim. This Court reviews a trial court's grant of a motion for directed verdict *de novo*.

*Herring v. Food Lion, LLC*, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005), *aff'd per curiam*, 360 N.C. 472, 628 S.E.2d 761 (2006) (internal citations omitted). "To recover damages for actionable negligence, plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach." *Petty v. Print Works*, 243 N.C. 292, 298, 90 S.E.2d 717, 721 (1956). The burden rests upon the plaintiff to "offer evidence sufficient to establish, beyond mere speculation or conjecture, every essential element of negligence. Upon his failure to do so, a motion for a directed verdict is properly granted." *Oliver v. Royall*, 36 N.C. App. 239, 242, 243 S.E.2d 436, 439 (1978) (citing *Mills v. Moore*, 219 N.C. 25, 12 S.E.2d 661 (1941); *Ingold v. Carolina Power & Light Co.*, 11 N.C. App. 253, 181 S.E.2d 173 (1971)).

## III.  Defendants' Motions for Directed Verdict

The majority's opinion relies on *Racine* and *Griffeth* and holds a reasonable inference of Ingram's and McLaurin's negligence can be inferred solely from the fact an accident occurred. As shown below, these cases are easily distinguishable from plaintiff's facts and do not control or support the result here. *Harris* is controlling and binding precedent that compels we affirm the trial court's order.

CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

## A. *Griffeth*

In *Griffeth*, the plaintiff's vehicle was stopped in the left lane of traffic while attempting to make a left turn when the defendant struck the rear of the plaintiff's vehicle. 24 N.C. App. at 441, 210 S.E.2d at 903. The plaintiff testified she witnessed the defendant's vehicle traveling behind her and may have witnessed defendant's vehicle coming toward her in her rear view mirror. *Id.* The plaintiff's evidence tended to show the road may have also been wet. *Id.* at 443, 210 S.E.2d at 904.

This Court stated:

[T]he mere fact of a collision with a vehicle ahead furnishes some evidence that the *following motorist* was negligent as to speed, was following too closely, or failed to keep a proper lookout. We have held, however, that this is by no means an absolute rule to be mechanically applied in every rear-end collision case. *Whether in a particular case there be sufficient evidence of negligence to carry that issue to the jury must still be determined by all of the unique circumstances of each individual case, the evidence of a rear-end collision being but one of those circumstances.*

*Id.* at 442-43, 210 S.E.2d at 904 (internal citations and quotations omitted) (emphasis supplied).

Here, unlike in *Griffeth*, plaintiff testified on numerous occasions she was unaware of which direction Ingram was traveling and did not see Ingram's vehicle at any time prior to the accident. Plaintiff also repeatedly testified she was unaware of any act of negligence on the part of either Ingram or McLaurin or who or what caused the accident. Plaintiff failed to produce any evidence regarding which portion of Ingram's vehicle collided with McLaurin's vehicle.

Plaintiff also testified that McLaurin's front bumper cover was torn off and the front driver's side of McLaurin's vehicle was damaged. After the collision occurred, both vehicles stopped side-by-side facing south. No evidence was presented of a rear end collision or that the roadway was wet. The evidence presented was contrary to either a rear-end collision or roadway weather conditions that should have placed either driver or a reasonably prudent driver on notice to exercise greater care. The facts and holding in *Griffeth* do not support the majority's holding here.

CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

## B. *Racine*

In *Racine*, the plaintiff brought a negligence action against the driver who also struck the plaintiff's vehicle from behind. 6 N.C. App. at 342, 169 S.E.2d at 914. In reversing the trial court's grant of non-suit in favor of the defendant, this Court concluded the defendant had traveled approximately 1,000 feet in dense fog before the collision occurred. This Court held the defendant's "negligence in driving his truck at a speed greater than was reasonable and prudent *considering the conditions then and there existing*" could be inferred by the jury. *Id.* at 346, 169 S.E.2d at 916-17 (emphasis supplied).

Here, unlike in *Racine*, no inference of negligence arises based upon weather or road conditions or any other circumstances surrounding the collision. No evidence was presented that either vehicle was struck from behind or that either vehicle "collided with the vehicle ahead of it." *Id.* at 345, 169 S.E.2d at 916. Plaintiff testified the collision occurred in the mid-afternoon, when the weather was clear, and the road was flat. Based upon these conditions, and in the absence of any evidence other than a collision occurred, no reasonable jury could infer either of defendants' negligence based solely upon plaintiff's testimony. The facts and holding in *Racine* also do not support the majority's holding at bar.

## C. *Harris*

The trial court's judgment granting defendants' motions for directed verdict should be affirmed based on this Court's precedent in *Harris*. Like plaintiff at bar, Harris was a passenger in the defendant's vehicle, which collided with another vehicle. *Harris*, 12 N.C. App. at 405, 183 S.E.2d at 281. Also like plaintiff, Harris testified she: (1) did not see the second vehicle prior to the collision; (2) was unaware of the manner in which the vehicle was operated by the defendant; and (3) did not know the cause of the accident. *Id.* at 405, 183 S.E.2d at 281-82.

This Court affirmed the trial court's grant of directed verdict in favor of the defendant and stated, "It is manifest that the evidence was insufficient for submission to the jury. We hold that defendant's motion for a directed verdict was properly allowed." *Id.* at 405, 183 S.E.2d at 282.

Plaintiff's testimony wholly failed to establish a *prima facie* cause of action for negligence by either McLaurin or Ingram or both defendants. "The mere fact that an accident occurred is not enough

CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

to infer negligence." *Oliver*, 36 N.C. App. at 242, 243 S.E.2d at 439. The burden rests upon the plaintiff to "offer evidence sufficient to establish, beyond mere speculation or conjecture, every essential element of negligence. Upon his failure to do so, a motion for a directed verdict is properly granted." *Id.*

This Court has also held the plaintiff bears the burden of proof to establish all required elements of negligent conduct by defendant and cannot rely on the collision alone to survive defendants' motion for directed verdict.

> In order for plaintiff to be entitled to go to the jury on the issue of negligence he must introduce evidence either direct or circumstantial, or a combination of both, sufficient to support a finding that defendant was guilty of the act of negligence complained of and that such act proximately caused plaintiff's injury, including the element that the injury was reasonably foreseeable under the circumstances.

*Johnson v. Williams*, 19 N.C. App. 185, 187, 198 S.E.2d 192, 194 (1973) (citation omitted).

The majority's opinion asserts this dissenting opinion would require passengers who claim injuries from vehicular accidents to be required to describe the manner in which the defendants operated their vehicles at the time of the collisions. That statement fails to recognize long-established precedents requiring plaintiffs to show a breach of duty and proximate cause.

Plaintiff bears the burden during her case-in-chief to establish the *prima facie* case showing each required element of negligence. *Oliver*, 36 N.C. App. at 242, 243 S.E.2d at 439; *see Ingold v. Carolina Power & Light Co.*, 11 N.C. App. 253, 255, 181 S.E.2d 173, 174 (1971) ("The burden was upon plaintiff to produce evidence, either direct or circumstantial, sufficient to establish the two essential elements of actionable negligence, namely: (1) that defendant was guilty of a negligent act or omission; and (2) that such act or omission proximately caused his injury." (citing *Sowers v. Marley*, 235 N.C. 607, 70 S.E.2d 670 (1952)). If the plaintiff fails to meet this burden, the trial court must and correctly grants the defendant's motion for directed verdict. *Oliver*, 36 N.C. App. at 242, 243 S.E.2d at 439. The mere fact that a collision occurred, without more, is manifestly insufficient evidence to send the case to the jury. *Id.*

## D. Analysis

Plaintiff and Dr. Sabella were the only witnesses at trial. Plaintiff testified on numerous occasions she did not observe the position or direction of Ingram's vehicle prior to the collision and was unaware of any negligence on Ingram's part. Plaintiff also testified she was unaware of any negligence on McLaurin's part. Plaintiff testified she observed McLaurin engage her left turn signal, look to the left for oncoming traffic, and merge into the center turn lane prior to impact. Plaintiff failed to proffer any evidence, direct or circumstantial, tending to show or support any inference either McLaurin or Ingram were negligent or the conduct of either or both drivers were the proximate cause of the collision. Plaintiff testified on numerous occasions neither Ingram nor McLaurin did anything wrong and plaintiff knew of nothing either Ingram or McLaurin did to cause the accident. The only fact plaintiff established was being a passenger in a car that came in contact with another car. This testimony is "manifest[ly] . . . insufficient for submission to the jury." *Harris*, 12 N.C. App. at 405, 183 S.E.2d at 282.

Given the unique circumstances of this case as presented solely by plaintiff's testimony, the mere fact a collision occurred was insufficient to submit this case to the jury. *Griffeth*, 24 N.C. App. at 442-43, 210 S.E.2d at 904. No reasonable jury could conclude either McLaurin or Ingram were negligent as a matter of law from the evidence plaintiff presented. *See id.* ("In determining whether a motion for directed verdict should be granted, the test to be applied is whether the evidence[] . . . affords but one conclusion as to the verdict that reasonable men could have reached"). Due to plaintiff's failure to establish a *prima facie* cause of action for negligence, I vote to affirm the trial court's judgment granting defendants' motions for directed verdict.

## IV. Repudiation

The majority's opinion "summarily rejects" but fails to analyze defendants' alternative argument to affirm the trial court's judgment for directed verdict. Plaintiff's testimony at trial "unequivocally repudiated" of the allegations made in her complaint. *Cogdill v. Scates*, 290 N.C. 31, 44, 224 S.E.2d 604, 611 (1976).

Plaintiff's complaint alleges Ingram "carelessly and negligently operate[d] his vehicle." Plaintiff's complaint alleges McLaurin "carelessly and negligently operate[d] the McLaurin vehicle." Plaintiff "un-

CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

equivocally repudiated" her allegations of negligence against both defendants when she testified:

Q. Did you see Ms. McLaurin do anything wrong that day?

A. No, not to my knowledge . . . .

Q. And you do not know of anything that Mr. Ingram did that day to cause the collision, do you?

A. No, sir.

Q. I think you testified that you are not aware of anything Ms. McLaurin did that day to cause the accident; is that correct?

A. Correct.

Q. So all you are aware of or all that you know, is that you were in a car that came into contact with another car.

. . . .

A. Um-hum.

Q. You also said that you are not aware of anything Mr. Ingram did wrong . . . .

A. Correct.

Q. The only thing that you know as you sit here today is that you were a passenger in a car that came into contact with another car?

. . . .

A. Correct.

Our Supreme Court has stated:

If, at the close of the evidence, a plaintiff's own testimony has unequivocally repudiated the material allegations of his complaint and his testimony has shown no additional grounds for recovery against the defendant, the defendant's motion for a directed verdict should be allowed.

Even Professor McCormick, the chief exponent of the liberal view that generally a party should not be concluded by his adverse testimony, recognized that in some situations a court would be fully justified in giving a party's adverse testimony the effect of a judicial admission. He wrote: This much, however,

should be conceded, even under the liberal view. . . . [I]f a party testifies deliberately to a fact fatal to his case, the judge if his counsel, on inquiry, indicates no intention to seek to elicit contradictory testimony, may give a nonsuit or directed verdict. Under these circumstances, the party and his counsel advisedly manifest an intention to be bound.

*Cogdill*, 290 N.C. at 44, 224 S.E.2d at 611-12 (internal citations and quotations omitted). Like here, the plaintiff in *Cogdill* was a passenger in a car involved in a collision with another car. 290 N.C. at 44, 224 S.E.2d at 612.

Our Supreme Court in *Cogdill* held that the defendant driver's motion for directed verdict should have been allowed when the plaintiff's "statements were diametrically opposed to the essential allegations of her complaint and destroyed the theory upon which she had brought her action for damages." 290 N.C. at 43, 224 S.E.2d at 611. The plaintiff's testimony repudiating her negligence claim "was deliberate, unequivocal and repeated." *Id.*

This Court has also addressed the question to "what extent and under what circumstances is a party bound by her own adverse testimony." *Body v. Varner*, 107 N.C. App. 219, 222, 419 S.E.2d 208, 210 (1992) (Wynn J., concurring). Like here, the plaintiffs in *Body* were passengers in a car involved in a collision with another car. 107 N.C. App. at 220, 419 S.E.2d at 209. The plaintiffs sued both drivers and contended the "defendants were concurrently negligent and that the concurrent negligence was the direct and proximate cause of the collision and the injuries sustained therefrom." *Id.* The plaintiff Body then testified during cross-examination on deposition:

[D]efendant Body's attorney asked plaintiff Candy Body if there was anything about [defendant] Mr. Body's driving that caused you any concern? She responded in the negative. She also testified that defendant Body's driving was normal. Defendant Varner's attorney queried plaintiff Body, what could Mr. Body have done to avoid the accident?, to which she answered:

To be honest with you, I don't know. I mean once he moved into the passing lane he couldn't have gone back into the other lane because she was there turning. He couldn't have gone to the left because there was a ditch. We tried to stop, that was the only thing we could do. So in my opinion he did everything he could do to avoid it.

CAMPBELL v. INGRAM

[180 N.C. App. 239 (2006)]

Later, plaintiff Body was asked by defendant Varner's attorney:

What is the basis for your allegations in your lawsuit, that [defendant Body] failed to keep a proper lookout, that he . . . failed to keep his vehicle under proper control, that he operated at a greater speed than was reasonably prudent, that he operated his vehicle without due caution and circumspection and at a speed in the manner as to endanger personal property. Do you have any evidence to support those allegations?

Plaintiff Body responded, No.

Defendant Varner's attorney also elicited the following testimony from plaintiff Body:

Q. So under the circumstances is it your opinion that he [defendant Body] was driving too fast for the conditions as he was passing?

A. No.

Q. As far as you know was he keeping a proper lookout?

A. Yes.

Q. Did he ever lose control of the car at any time before the accident?

A. No.

. . . .

Q. Did he signal his intent to pass before he actually started his passing movement?

A. Yes.

Q. How did he do that?

A. He turned on the left turn signal.

Plaintiff Body even testified that had defendant Body blown his horn, he would have . . . made some noise, but we would have still hit the van. When asked point-blank whether plaintiff Body had any evidence to support the allegations of negligence on the part of her husband, she answered simply, No.

Id. at 221-22, 419 S.E.2d at 209-10.

Relying on our Supreme Court's decision in *Cogdill*, this Court held "plaintiff's are bound by . . . statements voluntarily made and sworn to by plaintiff Body because the statements unequivocally repudiate any claim for negligence." *Id.* at 222, 419 S.E.2d at 210. This Court determined "[t]hese statements amounted to a judicial admission and are conclusively binding on plaintiffs." *Id.* at 224, 419 S.E.2d at 211.

Here, plaintiff's testimony clearly repudiated her allegations and entitled defendants to a directed verdict. Her testimony was, in effect, a voluntary dismissal of plaintiff's negligence claims against Ingram and McLaurin. *Id.*; *see also Cogdill v. Scates*, 26 N.C. App. 382, 385, 216 S.E.2d 428, 430 (1975) ("[Plaintiff's] testimony not only would entitle defendant to a directed verdict; it amounts, in effect, to a voluntary dismissal of her alleged cause of action against [defendant]."), *aff'd*, 290 N.C. 31, 224 S.E.2d 604 (1976).

I vote to affirm the trial court's grant of directed verdict for defendants alternatively or solely on plaintiff's repudiations of allegations in her complaint.

## V. Conclusion

Reviewed in the light most favorable to plaintiff, plaintiff's evidence was manifestly insufficient to submit the issue of negligence to the jury. The only inference of negligence that could be drawn would be based on "mere speculation or conjecture." *Oliver*, 36 N.C. App. at 242, 243 S.E.2d at 439; *Herring*, 175 N.C. App. at 27, 623 S.E.2d at 284. Plaintiff failed to present any evidence to *prima facie* establish either of defendants' negligence as a matter of law.

The facts and holdings of *Racine* and *Griffeth* are distinguishable from and are not controlling precedents on these facts. Both these cases involve rear-end collisions with weather or road conditions present to place a reasonable and prudent driver on notice to exercise the care required under the circumstances. The evidence presented by plaintiff was manifestly insufficient for submission to the jury for the reasons stated in *Harris*, 12 N.C. App. at 405, 183 S.E.2d at 282.

Plaintiff's testimony represented an unequivocal repudiation of the allegations made in her complaint. *Cogdill*, 290 N.C. at 44, 224 S.E.2d at 611-12; *Body*, 107 N.C. App. at 222, 419 S.E.2d at 210. Plaintiff failed to provide "a scintilla of evidence" to support each element of her negligence claim and through her testimony repudiated the allegations in her complaint. *Herring*, 175 N.C. App. at 27, 623

S.E.2d at 284; *Cogdill*, 290 N.C. at 44, 224 S.E.2d at 611-12; *Body*, 107 N.C. App. at 222, 419 S.E.2d at 210.

On either of defendants' arguments, the trial court properly granted defendants' motions for directed verdict. I vote to affirm the trial court's judgment and respectfully dissent.